THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEVIN LANE, Defendant-Appellant.

First District (1st Division)   No. 84—0310

Opinion filed May 20, 1985.—Rehearing denied June 12, 1985.

Cheryl Berdelle, of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Donald P. Jonker, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Kevin Lane, and a codefendant, Thomas Minaghan, were charged with the delivery of more than 30 grams of cocaine on May 16, 1980. Both defendants were also charged, along with Kenneth Billet, with the delivery of more than 30 grams of cocaine on May 22, 1980. In addition, all three defendants were charged with the offense of calculated criminal drug conspiracy in that they allegedly conspired to deliver a quantity of more than 30 grams of cocaine. After a bench trial, defendant was found guilty of both deliveries and of the conspiracy charge, and was sentenced to six years in the Illinois Department of Corrections. Minaghan was acquitted of the May 16 delivery and found guilty of delivery of less than 30 grams on May 22, and received three years' probation. All charges were dismissed against Billet.

Defendant now appeals, arguing that the acquittal of his codefendant on the greater offense raises a reasonable doubt as to defendant's guilt, and that the statutory requirement for calculated criminal drug conspiracy, that the conspiracy be carried on by three or more persons, was not met where his co-conspirators were acquitted of the charge. We disagree and affirm.

Special Agent Rafael Tovar testified at trial that he was introduced to defendant by a third party, and that he met defendant at defendant's apartment in Oak Park during the first week of May 1980. Thereafter, on May 16, Tovar received a telephone message from defendant. When Tovar returned the call, defendant asked him if he was still interested in purchasing two ounces of cocaine. Tovar responded yes, and defendant informed him that the price would be $2,000 per ounce. Tovar then went to a restaurant in Forest Park where he received three telephone calls from defendant and was instructed to proceed to defendant's apartment. Defendant greeted Tovar at the door and searched him before inviting him in. Tovar gave defendant $4,000 in prerecorded bills in exchange for two ounces of cocaine. Tovar testified that to his knowledge no one else was present in the apartment during the transaction.

After the sale was completed, defendant expressed satisfaction at the manner in which the delivery had transpired and indicated that they could do business in the future. He then told Tovar that if he wanted more, he could call defendant from the same restaurant as before. Tovar inquired as to what quantity defendant was capable of selling, and defendant stated that "he would be able to do up to about half a pound without involving anyone else." Tovar indicated that he would be interested in purchasing 8 to 10 ounces and defendant told

him that "he could do it within a week."

On May 21, 1980, defendant called Tovar and asked if he was still interested in purchasing the eight ounces. The two then discussed price, and defendant told Tovar he would work on it. Defendant called Tovar again later that evening and told him that the deal would take place on Thursday, May 22. Tovar called defendant back and told him he would have the money. Defendant called Tovar three more times concerning whether Tovar would be willing to "front" the money before he received the cocaine. Tovar agreed to go to the specified restaurant the following night and wait for defendant's call.

At approximately 8:30 p.m. on May 22, Tovar, along with Agent Victoria Gadomski, arrived at the restaurant, where Tovar received defendant's call and was told to come to defendant's apartment. Upon their arrival, defendant again searched Tovar before inviting them in. The agents then saw codefendant Minaghan, who was sitting in defendant's living room, for the first time. Tovar protested Minaghan's presence and asked Minaghan what he knew about him. Tovar stated that Minaghan told him that he had been in defendant's apartment during the May 16 transaction and had fronted half of the cocaine on that date. Minaghan also told Tovar that if no money was going to be fronted for the present transaction, it would have to be done one ounce at a time. Tovar told them they were wasting his time, since he was under the impression that he would not have to front any money, then told them that he would take two ounces without fronting anything. Minaghan replied that this could not be done. Tovar then threatened to leave unless defendant and Minaghan contacted their source and came to some agreement. Minaghan then made a phone call, during which he allowed Tovar to speak with the source of the cocaine. Tovar then left the apartment with Minaghan and drove to a store across the street. Defendant and Agent Gadomski arrived at the location shortly thereafter. Within five minutes, a car driven by codefendant Billet pulled into the lot. Minaghan demanded the money from Tovar, but first allowed Tovar to search him for weapons. Tovar stated that Minaghan was not carrying any contraband at that point. Minaghan then approached Billet's car on the passenger side and communicated with Billet. He returned and informed Tovar that Billet had eight ounces of cocaine. Tovar gave Minaghan an envelope containing $14,000, and Minaghan returned to Billet's car, entering on the passenger side. When he emerged, he requested that they leave the area before delivering the drugs to Tovar; however, at Tovar's insistence, Minaghan withdrew five envelopes containing cocaine from his socks and gave them to the agent. Pursu-

ant to Tovar's direction, all three codefendants were then arrested by surveillance agents who were in the area.

On cross-examination, Tovar reiterated that he had never spoken with Minaghan over the telephone regarding either of the deliveries, nor was he aware of any involvement whatsoever by Minaghan prior to meeting him at defendant's apartment on May 22.

Agent Gadomski also testified, stating that Tovar had demanded all eight ounces at once even though Minaghan repeatedly told him he would only be able to obtain one ounce at a time unless the money was put up front. Gadomski further stated that Minaghan called the source of the cocaine at Tovar's request, that Tovar asked to speak with the source and in fact did all of the negotiating during the telephone conversation from defendant's apartment.

During closing argument, counsel for Minaghan argued lack of evidence with respect to Minaghan's involvement in the May 16 transaction, and further submitted that Minaghan was entrapped into selling eight ounces of cocaine, the evidence showing that Minaghan was never predisposed to sell anything over one ounce.

The trial court found defendant guilty of delivery of more than 30 grams of cocaine on May 16, and further found that defendant acted alone on that date. The court also found defendant guilty of delivery of more than 30 grams on May 22, stating its belief that defendant was always predisposed to sell eight ounces and that "[defendant] was the prime mover in the entire thing. He made the first sell. He engineered the second sell. He brought Tovar into the apartment." As to Minaghan, however, the court found no disposition to ever go beyond the one ounce, and held that Minaghan had been entrapped into selling more than 30 grams on May 22.

■■ Defendant now claims that Minaghan's acquittal on the greater offense raises a reasonable doubt as to defendant's guilt where the evidence was identical as to both defendants. It is well established that the failure to convict a codefendant does not raise reasonable doubt as to the guilt of the other codefendant unless it is demonstrated that the evidence against both defendants is identical in all respects (*People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671), and that where there is the slightest difference in the evidence as between codefendants, the acquittal of one does not raise a reasonable doubt as to the guilt of the other. (*People v. Cartalino* (1982), 111 Ill. App. 3d 578, 584, 444 N.E.2d 662.) We believe that the evidence against defendant was sufficiently dissimilar to that against Minaghan to support the trial court's ruling, where Agent Tovar testified at length as to his involvement with defendant prior to May 22: Defend-

ant called Tovar to initiate the deal, specifically stated that he was capable of handling a purchase of eight ounces without involving other parties, and made all of the arrangements with Tovar leading up to the May 22 transaction. In contrast, the record lacks any credible evidence of Minaghan's alleged involvement prior to May 22, and fully supports the trial court's finding that Minaghan was at no time predisposed to sell more than one ounce of cocaine. Under these circumstances, we must conclude that the acquittal of Minaghan did not raise a reasonable doubt as to the guilt of defendant.

■ Defendant next contends that his conviction of calculated criminal drug conspiracy must be reversed because the two alleged co-conspirators were acquitted of that charge. Under defendant's interpretation, the statute requires at least three convictions before any one conviction may stand. He also argues that the court's failure to make a specific finding in the record with respect to his conviction of the conspiracy offense requires that this court amend the mittimus to reflect the absence of this conviction. We find neither support in law nor in the record for defendant's contentions.

The offense of calculated criminal drug conspiracy is defined in section 405(b) as follows:

> "For purposes of this section, a person engages in a calculated criminal drug conspiracy when:
>
> (1) he violates any of the provisions of subsections (a) or (b) of Section 401 or subsection (a) of Section 402, and
>
> (2) such a violation is a part of a conspiracy undertaken or carried on with two or more persons; and
>
> (3) he obtains anything of value greater than $500 from, or organizes, directs or finances such violation or conspiracy." (Ill. Rev. Stat. 1983, ch. 56½, par. 1405(b).)

One of the purposes behind the Act is to "penalize most heavily the illicit traffickers and profiteers of controlled substances." (Ill. Rev. Stat. 1983, ch. 56½, par. 1100.) A violation of this section requires that defendant conspire with at least two others to manufacture, deliver or possess certain enumerated controlled substances. While a "conspiracy" is clearly one of the elements of calculated criminal drug conspiracy (*People v. Vincent* (1980), 92 Ill. App. 3d 446, 415 N.E.2d 1147), the statute does not specifically define the term. We must therefore, of necessity, look to the simple conspiracy statute, which sets forth the elements of the offense of conspiracy and to those cases interpreting it, in order to determine what constitutes a conspiracy involving controlled substances. That statute specifically provides that it shall not be a defense to conspiracy that the person or persons with

whom the accused is alleged to have conspired have been acquitted. (Ill. Rev. Stat. 1983, ch. 38, par. 8—2(b)(4); *People v. Jayne* (1977), 52 Ill. App. 3d 990, 368 N.E.2d 422.) We believe that the same rule should apply to a conspiracy which has as its objective the delivery or possession of controlled substances, and that such construction is logically consistent with the expressed legislative intent behind the calculated criminal drug conspiracy statute. We hold that at least three convictions are not required under the calculated criminal drug conspiracy statute.

■ We also reject defendant's contention that the trial court's failure to make an explicit finding in the record with respect to his conviction for this offense denoted the absence of such conviction. This issue was dealt with by the court in *People v. Williams* (1975), 33 Ill. App. 3d 219, 338 N.E.2d 133, wherein defendant was convicted of rape and robbery and sentenced over objections that the trial court made a finding of guilty on the rape charge only. The appellate court stated that: "Unless contradicted by other facts in the record the common law record imports verity." Finding no contradictions in the record, the court affirmed both convictions. In the instant case, the order of sentence and commitment, which was signed by the trial judge, reflects three convictions, including that of calculated criminal drug conspiracy. This conviction is also reflected in the court's memorandum of orders. There are simply no facts before this court which would contradict the common law record, and, accordingly, defendant's contention must fail.

■ Finally, defendant argues that if this court affirms his conviction under the drug conspiracy statute, it must vacate his additional conviction for the delivery of a controlled substance, which is a lesser included offense of the conspiracy crime. We agree with defendant that it was error to convict and sentence on both the offense of delivery of a controlled substance and the offense of calculated criminal drug conspiracy because both offenses arose from the same conduct (see *People v. Lucas* (1975), 33 Ill. App. 3d 309, 337 N.E.2d 103), and, accordingly, we affirm defendant's conviction and sentence for calculated criminal drug conspiracy and reverse his convictions and sentences for delivery of a controlled substance.

Affirmed in part, reversed in part.

CAMPBELL and BUCKLEY, JJ., concur.