THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTOPHER J. SHIMKUS, Defendant-Appellant.

Second District   No. 84—0379

Opinion filed August 15, 1985.

982

Sherman C. Magidson, of Chicago, and Carl P. Clavelli, of Schiller Park, for appellant.

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and Phyllis J. Perko and Andrea Becker, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Christopher J. Shimkus, was charged by indictment on March 4, 1983, with the offenses of unlawful delivery of 30 or more grams of a substance containing cocaine (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(a)(2)) (count I) and calculated criminal drug conspiracy (Ill. Rev. Stat. 1983, ch. 56½, par. 1405(a)) (count II). The cause proceeded to trial by jury, and jury verdicts were returned on the offenses of unlawful delivery of a controlled substance, unlawful delivery of 30 or more grams of a controlled substance, and calculated criminal drug conspiracy. Sentencing defendant only on the Class X delivery conviction, the trial court imposed a six-year prison term and a $7,500 fine. Following the denial of defendant's post-trial motions, he filed a timely notice of appeal.

Defendant asserts three bases for reversal of his convictions: (1) that the record does not support the conclusion that one delivery of 30 or more grams of a substance containing cocaine occurred; (2) that the trial court erred with respect to the verdict forms tendered to the jury; and (3) that the State failed to prove defendant's guilt beyond a reasonable doubt of the calculated criminal drug conspiracy offense.

Defendant along with two other individuals, Robert Thiel and Walt Marusiak, were charged with the unlawful delivery on February 15, 1983, of 30 or more grams of a controlled substance and calculated criminal drug conspiracy. Defendant did not testify during the trial, but Thiel, who pleaded guilty to a Class 1 unlawful delivery offense, did testify at defendant's trial.

During the month preceding the events on February 15, 1983, Thiel had sold cocaine to Glen Schneider, an agent for the Illinois Department of Law Enforcement (IDLE). Following Thiel's sale of co-

caine to Schneider on February 8, 1983, Schneider informed Thiel that he desired to purchase two ounces of cocaine. After a series of phone calls, they agreed to consummate the sale at Stogen's Tavern in Villa Park. In preparation for this meeting, Schneider was outfitted with a body transmitter designed to transmit sounds to IDLE agent Pierce, who was to be located near Schneider during the transaction.

At approximately 5:15 p.m. on February 15, 1983, IDLE agent Dan Callahan began conducting a surveillance of Thiel's home. There, he observed Thiel's brown 1977 Cadillac parked at the home and at approximately 5:45 p.m. observed the arrival of a tow truck registered to The Main Place, defendant's place of employment. At 7:10 p.m., Callahan observed codefendant Marusiak's silver-gray Buick Riviera parked behind the tow truck. Five minutes later, the Riviera and the tow truck left, and Callahan then departed for Stogen's Tavern.

According to Thiel, Marusiak and defendant arrived at his house between 6 and 6:30 p.m. on February 15, 1983. Thiel asked if defendant could obtain one ounce of cocaine and told defendant he was probably going to sell the ounce that night. Defendant and Marusiak left and returned approximately one hour later, and defendant produced a half-ounce of cocaine in a baggy. Thiel added baby laxative until the cocaine weighed approximately 28 grams. Thiel then placed the cocaine in a baggy and put that baggy into a white envelope on his dresser. Thiel testified defendant was probably in the room when he removed more cocaine from his dresser.

Immediately prior to leaving for Stogen's Tavern, Thiel testified he asked defendant "if he would take the other ounce for me because I didn't know if the guy was going to have the rest of the money for the other ounce." After telling defendant to leave for Stogen's Tavern in 15 minutes, Thiel left the house, placed approximately one ounce of cocaine into the trunk of his Volvo and drove to Stogen's Tavern alone. There, Thiel and Schneider engaged in a conversation inside Thiel's Volvo. Thiel exited and opened the trunk, returned to the car and handed Schneider a white envelope. Schneider inspected the cocaine and handed Thiel $2,000. After the exchange, Thiel handed Schneider a small, capped plastic vial containing approximately 3 grams of cocaine. Thiel explained that the vial represented the 3 grams of cocaine Thiel had "shorted" Schneider in their previous February 8, 1983, cocaine transaction.

Thiel then backed his Volvo out of the parking place, drove a few hundred feet and reparked the car near where it had been parked previously. Thiel's brown Cadillac with two persons inside then pulled up behind the Volvo. Thiel exited the Volvo and walked back to the

passenger door of the Cadillac, where Thiel testified he handed the $2,000 to Marusiak. Thiel then returned, and informed Schneider that the two persons in the Cadillac had the other ounce, and that "we were going to do the rest of the deal at K's Tavern" located several blocks away from Stogen's Tavern. Once both cars were parked in a parking lot near K's Tavern, Thiel asked Schneider to count out the $2,000, exited, reached into the passenger side of the Cadillac and returned with a white envelope. Schneider inspected the envelope, inside of which was a clear plastic bag containing the cocaine, and then handed Thiel the money. Thiel again exited the car, handed something to the occupants of the Cadillac and returned to the Volvo.

Schneider immediately arrested Thiel, but the Cadillac left the parking lot pursued by police cars. Following a nine-block, 60 miles per hour chase, the Cadillac abruptly stopped, and both occupants exited and eluded the police officers. Defendant's fingerprints were found inside the Cadillac and on one of the envelopes delivered to Schneider. After his arrest, Thiel gave a written statement to the police officers implicating defendant in the transaction. A warrant was issued for defendant's arrest, and Lombard police officers began observing the house of defendant's girlfriend. On February 17, 1983, at approximately 1 p.m., Officer Carl Dillenkoffer observed two individuals leave the home, enter a yellow Firebird, and pull out of the driveway. Dillenkoffer and another officer followed and eventually pulled over the Firebird and found defendant crouched in a fetal position in the front passenger seat of the car. At the Lombard police station, defendant in hypothetical terms (using numbers for each participant) admitted to Officer Hamm that he gave Marusiak the $4,000 immediately prior to fleeing from the Cadillac.

Defendant contends that the State failed to prove him guilty beyond a reasonable doubt of the calculated criminal drug conspiracy offense. (Ill. Rev. Stat. 1983, ch. 56½, par. 1405.) In determining the validity of the calculated criminal drug conspiracy conviction, we are required to discuss briefly defendant's arguments relative to his unlawful delivery conviction. Defendant contends he was convicted improperly of delivery of 30 or more grams of a substance containing cocaine because the evidence established three separate deliveries each less than 30 grams: one for 28.4 grams, one for 26.9 grams and one for 2.3 grams. According to defendant's theory, therefore, the State failed to prove that he made any one delivery of 30 or more grams. Assuming, *arguendo*, and without deciding, that defendant is correct regarding the occurrence of three separate deliveries, defendant's conviction for calculated criminal drug conspiracy can nonethe-

less stand.

To support a calculated criminal drug conspiracy conviction, the statute requires proof of either a violation of section 401(a) (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(a) (delivery of 30 or more grams of a substance containing cocaine)), or a violation of section 401(b) (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(b) (delivery of more than 10 but not more than 30 grams of a substance containing cocaine)). Even under defendant's theory, a predicate delivery sufficient to support a conviction for calculated criminal drug conspiracy was established here.

■ In this regard, defendant complains of the number and lack of specificity of the verdict forms on the delivery offense tendered to the jury. The State responds that defendant has waived this issue. We agree. The State argues that when it tendered instructions 27 and 28 it included verdict forms of not guilty and guilty of the offense of delivery of a controlled substance without reference to the amount delivered. Defendant never objected to the form of the verdicts when they were tendered. To the contrary, defendant expressly informed the court that the verdict forms were properly submitted to the jury. Defendant failed to raise this claim of error in either his post-trial motion or his amended post-trial motion. A defendant cannot allege as error on appeal a verdict form which he did not object to at trial. (*People v. Hamelin* (1979), 75 Ill. App. 3d 445, 394 N.E.2d 566.) Nor can defendant successfully argue that the tendered verdict forms constitute plain error. (87 Ill. 2d R. 615.) Accordingly, defendant has waived appellate review of this issue.

In any event, defendant could not have been prejudiced on the facts of this case because there was no danger that the jury did not agree on one specific delivery. As noted previously, the evidence read as defendant would like establishes three separate deliveries of a substance containing cocaine weighing 28.4 grams, 26.9 grams and 2.3 grams respectively. Because the jury found defendant guilty of delivery of 30 or more grams of a substance containing cocaine, the 12 jurors necessarily agreed on the 28.4 gram delivery because the amount delivered on the other two occasions, 26.9 grams and 2.3 grams, when added together, totaled less than 30 grams.

Turning now to the principal challenge leveled at defendant's calculated criminal drug conspiracy conviction, defendant maintains that he was not proved guilty of the offense beyond a reasonable doubt because no evidence was introduced as to the share of the proceeds defendant was to receive from the cocaine transaction. Section 405(b) provides:

"[A] person engages in a calculated criminal drug conspiracy when:

(1) he violates any of the provisions of subsections (a) or (b) of Section 401 or subsection (a) of Section 402; and

(2) such violation is a part of a conspiracy undertaken or carried on with two or more other persons; and

(3) he obtains anything of value greater than $500 from, or organizes, directs or finances such violation or conspiracy."

(Ill. Rev. Stat. 1983, ch. 56½, par. 1405(b).)

The record establishes beyond a reasonable doubt that the first two requirements of the statute were satisfied; defendant violated section 401 (Ill. Rev. Stat. 1983, ch. 56½, par. 1405(b)(1)) and two other individuals, Marusiak and Thiel, were part of the conspiracy (Ill. Rev. Stat. 1983, ch. 56½, par. 1405(b)(2)).

The parties agree that the term "anything of value" in subsection (b)(3) (Ill. Rev. Stat. 1983, ch. 56½, par. 1405(b)(3)) refers to a defendant's share in the proceeds from the cocaine transaction. While deciding a different issue, the decision in *People v. Biers* (1976), 41 Ill. App. 3d 576, 353 N.E.2d 389, provides support for the parties' interpretation of the statutory language. In *Biers,* the trial court instructed the jury that to convict all members of the calculated criminal drug conspiracy, the State was required only to prove that one of the members of the underlying conspiracy had obtained anything of value greater than $500. In ruling that the tendered instruction constituted reversible error, the *Biers* court emphasized the legislative purpose underpinning the calculated criminal drug conspiracy offense.

"The apparent intent of section 405, therefore, is to penalize above and beyond those who manufacture, deliver or possess controlled substances (Ill. Rev. Stat. 1975, ch. 56½, pars. 1401, 1402) each person who, in a conspiracy to manufacture, deliver or possess controlled substances, either organizes or controls the effort or *profits* by more than $500." (Emphasis added.) *People v. Biers* (1976), 41 Ill. App. 3d 576, 581, 353 N.E.2d 389, 393; accord, *People v. Lucas* (1975), 33 Ill. App. 3d 309, 314, 337 N.E.2d 103, 107 ("The statute *** penalizes those *** who profit *** in the amount of at least $500.").

■ The sole authority cited by the *Biers* court for its "profits" language is the legislative intent expressed in section 100 of the Illinois Controlled Substances Act to "penalize most heavily the illicit traffickers or profiteers of controlled substances, who propagate and perpetuate the abuse of such substances with reckless disregard for its consumptive consequences upon every element of society." (*People*

*v. Biers* (1976), 41 Ill. App. 3d 576, 580, 353 N.E.2d 389, 393, citing Ill. Rev. Stat. 1975, ch. 56½, par. 1100.) We agree with the parties that the statute requires the State to prove that defendant received something of value greater than $500 from the proceeds. Nevertheless, the term "profits" is somewhat misleading. What we believe the *Biers* court meant and the statute requires is proof that a defendant's share of the proceeds from the transaction—"the total amount brought in"—exceeded $500. Webster's Third New International Dictionary 1807 (1981).

■ The statute requires that a defendant "obtain" something of value greater than $500. The word "obtain" is not defined in the statute. In its ordinary and popular meaning, "obtain" means "to gain or attain possession or disposal of [usually] by some planned action or method." (Wester's Third New International Dictionary 1559 (1981).) Therefore, to commit the offense of calculated criminal drug conspiracy, defendant must have gained possession of something of value in which his share of the proceeds was greater than $500. See *People v. Biers* (1976), 41 Ill. App. 3d 576, 353 N.E.2d 389.

■ The evidence in the case at bar established that defendant provided one-half of the total amount of the controlled substance sold and was a substantial participant in the transaction. Thiel testified that on the evening of February 15, 1983, he asked defendant if defendant could get him an ounce of cocaine. Defendant returned in an hour to Thiel's house with one-half ounce of cocaine, which was then cut with baby laxative to weigh approximately 28 grams. Thiel provided the other ounce of the controlled substance sold to Schneider. The record contains no evidence that the third conspirator, Marusiak, provided any of the substance containing cocaine.

As Thiel was leaving his house for the tavern, he requested defendant to bring the other ounce to Stogen's Tavern 15 minutes later. Concerning the events at the tavern, Thiel testified that although he could not see "clearly" the driver of the Cadillac, he presumed defendant was the driver because he was "the one that was supposed to be behind the wheel." Furthermore, Officer Hamm testified defendant admitted at the police station through use of a "hypothetical" that he was in Thiel's Cadillac throughout the transaction, that he held the $4,000 paid by Schneider for the controlled substance and gave the entire amount to Marusiak immediately prior to his flight from the Cadillac after the car chase. From these facts, the jury could reasonably infer that defendant's share of the $4,000 total proceeds was greater than $500. Since the act of one conspirator is the act of all conspirators (*People v. Vincent* (1980), 92 Ill. App. 3d 446,

461-62, 415 N.E.2d 1147, 1159), the jury properly could have concluded that defendant obtained more than $500 in proceeds the moment Thiel gained possession of the $4,000. We do not find the evidence supporting defendant's conviction for calculated criminal drug conspiracy so improbable as to raise a reasonable doubt of his guilt. *People v. Puente* (1984), 125 Ill. App. 3d 152, 158, 465 N.E.2d 682, 687.

■■ ■ As part of defendant's reasonable doubt argument on the calculated criminal drug conspiracy conviction, he emphasizes as significant the fact that the jury during its deliberations sent a note to the trial judge which read:

"Does there just have to be a $500 transaction or does the defendant himself have to receive $500 or more? Also, does the term 'defendant' mean one person or the entire group of conspirators?"

The parties and the trial judge conferred and agreed upon the following response to the jury's note:

"You have been instructed as to the law applicable to the facts of the case. Please review the instructions. The instructions constitute the law to be applied to the facts that you have heard."

As emphasized by the State, defendant does not contend that the jury was instructed improperly. Indeed, the instructions tendered by the trial judge on the calculated criminal drug conspiracy offense were Illinois Pattern Jury Instructions, Criminal, Nos. 17.14 and 17.15 (2d ed. 1981). In any event, an objection raised by defendant to the instructions for the first time on appeal would be waived. (*People v. Tannenbaum* (1980), 82 Ill. 2d 177, 180.) Moreover, review of the instructions tendered to the jury, as the court directed the jury to do in response to its note, warrants the conclusion that the jury properly understood that defendant himself, and not just the conspiracy as a whole, was required to have received something of value greater than $500.

■■ Comparison of the unlawful delivery instruction and the calculated criminal conspiracy issues instruction tendered to the jury is illuminating. To sustain its charge of delivery of 30 or more grams of a substance containing cocaine, the court instructed the jury that the State was required to prove the defendant or one for whose conduct he was legally responsible knowingly delivered 30 or more grams of a substance containing cocaine. The court also provided an instruction to the jury on legal responsibility. In contrast, the calculated criminal drug conspiracy offense contains no reference to accountability.

Rather, to sustain the charge of calculated criminal drug conspiracy, the court instructed the jury that the State was required to prove that *"the defendant* obtained something of value greater than $500 from such delivery or agreement." (Emphasis added.) A reasonable conclusion to draw from a review of these instructions is that the jury—following the trial court's directions—reread the instructions relating to calculated criminal drug conspiracy, which, unlike the delivery instructions, required defendant himself to have obtained something of value greater than $500. We therefore find unpersuasive defendant's contention that the jury's verdict must be reversed because the jury was confused regarding the conspiracy offense.

■■ ■ Although not argued by the parties, our affirmance of defendant's calculated criminal drug conspiracy conviction necessitates that we vacate his delivery conviction as a lesser included offense. (*People v. Lane* (1985), 133 Ill. App. 3d 215, 220, 478 N.E.2d 1160, 1164, citing *People v. Lucas* (1975), 33 Ill. App. 3d 309, 337 N.E.2d 103.) We recognize, however, that defendant was only sentenced on the Class X delivery conviction. His six-year prison term was the minimum term available for a Class X felony conviction (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(3)), and his $7,500 fine is very low relative to the maximum available $500,000 fine (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(a)(2)). As a result of this court's disposition, defendant remains guilty of a Class X felony; calculated criminal drug conspiracy. The identical minimum six-year sentence (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(3)) and maximum $500,000 fine (Ill. Rev. Stat. 1983, ch. 56½, par. 1405) are applicable to the conspiracy conviction. Because defendant received the minimum available term of imprisonment and a relatively small fine for the Class X delivery offense, we can see no prejudice in imposing the same prison term and fine for the Class X conspiracy conviction. (87 Ill. 2d R. 615(b).) In the interest of judicial economy, therefore, we vacate defendant's conviction and sentence for the unlawful delivery conviction. We affirm defendant's calculated criminal drug conspiracy conviction, and sentence defendant to a six-year prison term and a fine of $7,500.

Affirmed in part, vacated in part.

REINHARD and STROUSE, JJ., concur.