THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ISMAR ABDENNABI et al., Defendants-Appellants.

First District (1st Division) Nos. 85—1365, 85—1410 cons.

Opinion filed July 6, 1987.

Michael D. Ettinger & Associates, Ltd., of Oak Lawn, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., James E. Fitzgerald, and Terry Takash, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

Following a jury trial, defendant Ismar Abdennabi (Ismar) was found guilty of solicitation to commit aggravated arson (Ill. Rev. Stat. 1983, ch. 38, par. 8—1(a)), conspiracy to commit aggravated arson (Ill. Rev. Stat. 1983, ch. 38, par. 8—2(a)), conspiracy to commit arson (Ill. Rev. Stat. 1983, ch. 38, par. 8—2(a)), attempted aggravated arson (Ill. Rev. Stat. 1983, ch. 38, par. 8—4(a)), and attempted arson (Ill. Rev. Stat. 1983, ch. 38, par. 8—4(a)). The jury also found Jose Abdennabi (Jose) guilty of conspiracy to commit aggravated arson (Ill. Rev. Stat. 1983, ch. 38, par. 8—2(a)), conspiracy to commit arson (Ill. Rev. Stat. 1983, ch. 38, par. 8—2(a)), attempted aggravated arson (Ill. Rev. Stat.

1983, ch. 38, par. 8—4(a)), and attempted arson (Ill. Rev. Stat. 1983, ch. 38, par. 8—4(a)). After a hearing in aggravation and mitigation, Ismar was sentenced to four years in the Illinois Department of Corrections for the offenses of solicitation to commit aggravated arson and attempted aggravated arson, and one year in the Illinois Department of Corrections for the offense of conspiracy to commit aggravated arson, all sentences to run concurrently. Jose was sentenced to four years' probation and six months in the Cook County House of Corrections for the offense of attempted aggravated arson, and 30 months' probation and six months in the Cook County Department of Corrections for conspiracy to commit aggravated arson, both sentences to run concurrently. Ismar and Jose now appeal their convictions. Jose also appeals his sentence.

The testimony at trial established that Ismar leased the bottom floor of a building located at 1158 West Marquette in Chicago. In this space Ismar ran S & Z Food Markets, a grocery store. During the time the grocery store was in business, the apartments above it were rented to other tenants. These apartments were occupied by at least eight people.

George Chandiles testified that he is the president of the Future Insurance Agency in Chicago. Ismar and S & Z Food Markets took out a fire insurance policy on the store in May 1983 that could pay a total of $75,300 for a loss by fire.

Sanford White testified that he lived at 1140 West Marquette, which was approximately one-half block from the grocery store. In May or June 1983, White went to work at the grocery store as a security guard. White worked at the store until October 1983.

In July or August 1983, Ismar told White that "business was bad, and he wanted to get rid of the store." Ismar asked White if he knew anyone that could burn the store down for him. White replied that he did not know of anyone who would burn the store down. Defendant asked White if he would burn the store down, but White refused. Defendant told White that he wanted to collect the fire insurance proceeds and buy a bigger store.

On September 18, 1983, Ismar again told White that he wanted to burn the store down to collect the fire insurance proceeds. Ismar again asked White if he or someone he knew would burn the store down. White again refused. Defendant offered him $500 to act as a "lookout." White told defendant he did not want to become involved.

On October 3, 1983, Ismar, with Jose present, told White "the time is right, my man *** we are going to burn this shit." He further stated he and Jose were going to the suburbs to buy gasoline so no

one would become suspicious.

The following morning, White noticed a heavy smell of gasoline in the store. Ismar told White the gasoline was in the back of the store. White observed two shopping bags with gasoline cans behind a produce counter.

At this time, White asked Ismar what about the people living above the grocery store. Ismar responded, "[F]uck them people. [T]hey don't care about me *** this building is a dump."

Shortly thereafter, White went home and called the arson unit of the Chicago police department. He talked with Sergeant James Sandow. Later Sandow and White met, and White showed him the location of the store. After this meeting White returned to the store.

At 6 p.m., White observed Jose pouring gasoline out of the gasoline cans into empty Clorox bleach bottles. Jose then took the bleach bottles and placed them on the washroom floor. Subsequently, Jose took the gasoline cans out of the store and placed them in the trunk of his car.

White remained at the store until 7 p.m., which was closing time. Ismar asked White if he would act as "lookout" while Ismar spread the gasoline; he offered White $500. White told Ismar that he would have to give him some money "up front."

Ismar told White that he was going to stay in the store, and Jose was going to lock him in. Ismar gave White several dimes so he could call from an adjacent phone booth and wake him up between 3:30 and 4 a.m. He further instructed White to look around the outside of the store to see if the "coast was clear" for him to pour the gasoline. After making this telephone call, Ismar told White he should open the side burglar gates. Ismar would then come out of the store and light the poured gasoline. He then gave White $50 and a key to the burglar gates.

After the store was closed, White called the arson unit of the Chicago police department. At midnight that evening, White met two police officers from the arson unit in a park across the street from the store. White gave them the key and the $50 that Ismar had given to him. They then went to the station house, where White drew a floor plan of the store for the police officers.

At approximately 3:30 a.m., White called Ismar from the telephone booth as planned. White told Ismar "the coast is clear," and Ismar responded "okay." Shortly thereafter, an officer from the arson unit entered the grocery store and arrested Ismar. Later, Jose was arrested in the alley behind the grocery store.

# I

Defendants initially claim that they were not convicted beyond a reasonable doubt of attempted arson. (Ill. Rev. Stat. 1983, ch. 38, par. 8—4(a).) Defendants contend that the State failed to prove, beyond a reasonable doubt, that either of them intended to commit a specific offense (*e.g.*, arson) and they had taken a substantial step towards the commission of that offense. Ill. Rev. Stat. 1983, ch. 38, par. 8—4(a).

■ The State must prove that defendants intended to commit a specific offense in order to procure a conviction for attempt. (*People v. Terrell* (1984), 99 Ill. 2d 427, 431, 459 N.E.2d 1337, 1339-40.) The intent to commit a criminal offense need not be expressed, but may be inferred from the conduct of the defendant and the surrounding circumstances. See *People v. Athey* (1976), 43 Ill. App. 3d 261, 263, 356 N.E.2d 1332, 1334-35.

■ The facts of the instant case indicate that defendants intended to attempt to commit arson. Sanford White testified for the State that Ismar told him he was going to burn down the store. Jose and Ismar went to the suburbs to buy gasoline. He further testified that he observed Jose pouring gasoline into empty Clorox bleach bottles. He also observed Jose taking the empty gasoline cans out of the store and putting them into the trunk of his car. In addition, White testified that Ismar gave him $50 to act as a "lookout" while he started the fire.

The State further presented the testimony of several police officers, who stated that at the time of Ismar's arrest several Clorox bleach bottles filled with gasoline were found behind a false wall in the washroom of the store. Jose's fingerprint was found on one of these bottles. All of this evidence overwhelmingly shows defendants' intent to commit arson. An innocent intention cannot be ascribed to defendants' activities. Thus, the State proved beyond a reasonable doubt that defendants intended to commit arson.

■ Alternatively, defendants argue that the State failed to prove defendants took a substantial step towards the commission of arson. This argument misses the mark. The evidence discussed above which demonstrates defendants' intent also shows that they took a substantial step towards committing arson.

Jose purchased the gasoline. He brought the gasoline into the store and transferred it into inconspicuous bottles which were hidden behind a false wall. Moreover, he locked the burglar gates to the store with full knowledge that Ismar was inside ready to carry out their plot to commit arson in a few hours. His absence from the scene of the crime does not negate the substantial steps he took towards com-

mitting arson. It is not necessary for Jose to take part in the last proximate step of the crime to be convicted for attempt. *People v. Terrell* (1984), 99 Ill. 2d 427, 433, 459 N.E.2d 1337, 1340.

■ With respect to Ismar, the evidence is even more overwhelming. He conceived and directed the plot to burn down the store. Along with Jose, he purchased the gasoline. He was present in the store at the exact hour he planned on setting the fire. When Sanford White called to tell Ismar "the coast is clear," the only remaining step was to light the fire. Ismar's activities brought him within a dangerous proximity of successfully burning down his store. Thus, the State proved beyond a reasonable doubt that defendants took a substantial step towards committing arson.

## II

■ Defendants next argue that the State failed to prove beyond a reasonable doubt that they had conspired to commit arson. (Ill. Rev. Stat. 1983, ch. 38, par. 8—2(a).) Defendants claim that the State failed to prove an agreement to commit arson.

The existence of a conspiratorial agreement need not be proven by direct evidence, but may be inferred from the surrounding facts and circumstances. (*People v. Edwards* (1984), 128 Ill. App. 3d 993, 1004, 471 N.E.2d 957, 965.) The facts and circumstances of the instant case definitely support the inference that defendants had a conspiratorial agreement to commit arson. The record shows that on several occasions Ismar stated his intention to burn down the store. Jose was present during these conversations.

Moreover, Ismar stated that he and Jose were going to buy gasoline. Subsequently, Sanford White observed Jose transferring gasoline into inconspicuous bottles and putting gasoline cans into the trunk of his car. Jose's fingerprint was discovered on a bottle filled with gasoline. Additionally, the record shows that Jose locked the burglar gates with full knowledge that Ismar was inside and prepared to commit arson. These circumstances and acts raise a solid inference that defendants reached a conspiratorial agreement to commit arson.

Contrary to defendants' position, the evidence does not show that Jose merely approved or acquiesced to Ismar's plan. Instead, the evidence shows Jose's direct involvement in Ismar's plan to burn down the store. Thus, the State proved beyond a reasonable doubt that defendants had a conspiratorial agreement to commit arson.

## III

■ We next consider defendants' argument that they were preju-

diced when the State failed to tender a copy of an arson award letter to defendants' counsel. The letter recommended an award for the State's witness, Sanford White, for the information he provided to police which led to defendants' arrest. According to the defendants, the letter reflected on White's credibility, and the State's failure to tender it denied them due process of law. *Brady v. Maryland* (1963), 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, 1196-97; *United States v. Agurs* (1976), 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392.

Under the *Brady* rule, the prosecutor's failure to disclose evidence must be material and result in a denial of a fair trial. (*United States v. Agurs* (1976), 427 U.S. 97, 109, 49 L. Ed. 2d 342, 353, 96 S. Ct. 2392, 2400.) In the case at bar, the State's failure to tender the letter did not deny defendants a fair trial. Defendants' counsel cross-examined White at length about the possibility of his receiving an award for the information he provided to the police. Use of the letter itself would have provided little probative force to defendants' cross-examination of White. Failure to tender the letter did not violate the *Brady* rule.

## IV

■ Defendants next claim that they were prejudiced because the bailiff at trial inadvertently destroyed the jurors' notes of the State's case. The jurors continued to take notes during the defendants' case which they claim created a substantial likelihood that the jurors would place undue emphasis on this testimony.

At the outset we note that defendants have waived this issue on review because they did not object at trial, nor did they specify it in their motion for a new trial. (*People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856, 857; *People v. Hairston* (1970), 46 Ill. 2d 348, 367, 263 N.E.2d 840, 851-52.) The trial judge specifically asked if there were any objections to the jurors' continuing to take notes. No objections were raised. Defendants cannot raise arguments for the first time on appeal that certainly could have been raised at trial.

■ Assuming, *arguendo*, that this issue was not waived, we fail to see how defendants suffered any prejudice. The jurors had notes from the defendants' case. These notes were based on testimony that would have presumably favored defendants' case. The trial judge properly exercised his discretion in allowing the jurors to continue to take notes during defendants' case. See *People v. Sanders* (1984), 127 Ill. App. 3d 471, 475, 469 N.E.2d 287, 290.

V

■ Ismar and Jose contend that their convictions on the aggravated arson charges must be reversed because the statute under which they were convicted, section 20—1.1(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 20—1.1(a)(1)), is unconstitutional. We agree. In *People v. Johnson* (1986), 114 Ill. 2d 69, 73, 499 N.E.2d 470, 472, and *People v. Clark* (1986), 114 Ill. 2d 450, 460, 501 N.E.2d 123, 127, the Illinois Supreme Court held this subsection of the Criminal Code to be unconstitutional. The defendants' convictions, therefore, arose under an invalid statute and must be reversed.

■ Defendants further contend that the evidence and jury instructions on the invalid aggravated arson charges tainted defendants' trial on the arson charges, requiring reversal of these convictions as well. This argument was squarely addressed and rejected in *People v. Dukes* (1986), 146 Ill. App. 3d 790, 798, 497 N.E.2d 351, 357. *Dukes* arose under a similar procedural posture to the instant case. There was evidence that children were screaming in the burning building. Although this evidence was irrelevant to the simple arson charge, the court ruled that in light of the overwhelming evidence of defendant's guilt, admission of this evidence was not reversible error.

■ In the instant case, the evidence showed that defendants knew that people were present in the building, but did not care. This evidence is not nearly as prejudicial as that presented in *Dukes*, and the evidence of their guilt is equally overwhelming. Thus, the evidence and jury instructions on the aggravated arson charges do not require reversal of the arson convictions.

The trial judge merged the defendants' arson and aggravated arson convictions, and because we are reversing the aggravated arson convictions, we remand the cause for resentencing on defendants' arson convictions.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed with respect to the arson convictions, reversed with respect to the aggravated arson convictions, and remanded for resentencing on the arson convictions.

Affirmed in part, reversed in part, and remanded for resentencing.

CAMPBELL and O'CONNOR, JJ., concur.