THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LUIS GARCIA, Defendant-Appellant.

First District (6th Division) No. 1—89—0001

Opinion filed March 16, 1990.

Mitchell D. Kreiter & Associates, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, James E. Fitzgerald, and Janet C. Mahoney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RAKOWSKI delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendant was convicted of calculated criminal drug conspiracy, delivery of a controlled substance, and possession of a controlled substance with the intent to deliver. Defendant was sentenced to a term of six years for each offense, the sentences to run concurrently. The issues raised on appeal are: (1) whether the trial court committed reversible error in prohibiting defendant's testimony regarding his conversation with an alleged co-conspirator; (2) whether the State failed to prove each element of the offense of calculated criminal drug conspiracy beyond a reasonable doubt; and (3) whether defendant's convictions for delivery of a controlled substance and possession of a controlled substance with the intent to deliver should be reversed where these convictions were based on the same conduct which gave rise to his conviction for calculated criminal drug conspiracy.

John Mueller, a police officer working as an investigator for the State's Attorney's office, testified at the trial that he was contacted by a man named George Downs on November 30, 1987. Downs informed him that the deal for a kilogram of cocaine was set for December 2, 1987. The next day Downs again contacted Mueller and arranged to meet him the following morning. Downs told Mueller that they were to meet Sam Cannata at that time, and that Cannata would have the cocaine available for Mueller to inspect. Downs also told Mueller to have the purchase price of $35,000 with him at that time. The next morning Mueller and Downs went to a restaurant on the northside of Chicago where they met Cannata. Cannata told Mueller that he did not have the cocaine with him. He informed Mueller that his contact lived nearby, but that he wanted to see the money before he picked up the cocaine. Mueller contacted Victor Valdez, an investigator with the Illinois State Police department, who then arrived on the scene with the money. Cannata counted the money and returned it to Valdez. He then left the scene to get the cocaine but returned a short time later and told Mueller that the person with the cocaine was not at home. Cannata informed Mueller that he would arrange to have his "connect" meet them at the automobile dealership (dealership) where Cannata was employed, and they could "turn" the deal there. When Mueller was contacted by Downs, he and Valdez drove to the dealership. Valdez remained in the car while Mueller went inside. Cannata met Mueller at the service entrance and informed him that the "connect" was inside with the package. Cannata and Mueller went into the dealership, where Mueller saw defendant and a woman standing by the elevator. Cannata told Mueller that the deal would be

done on the elevator, but Mueller refused to use the elevator for the transaction. Defendant then displayed a package which he took from his jacket. Mueller again said that he was not going to get on the elevator, and that he only wanted to see the package. Defendant handed the package to Mueller, and Mueller opened it and observed squares of cocaine. Defendant told Mueller that it was "pure key" and that he would be happy with it. Mueller told defendant to wait while he got the money. He then gave a signal and defendant was arrested.

On cross-examination, Mueller stated that he had no knowledge that defendant, Downs and Cannata had any agreement with each other. Mueller also testified that prior to December 2, 1987, he had never seen defendant and Cannata together.

Nancy Hall, a forensic chemist, testified that the substance recovered was cocaine and that it weighed 953.47 grams.

Defendant testified in his own defense that he had known Cannata for 10 years. He stated that sometime in November 1987, his brother had a house for sale, and defendant asked Cannata if he was interested in purchasing it. Several weeks later Cannata contacted defendant. Defendant started to testify regarding his conversation with Cannata, but the State objected. The trial court sustained the State's objection and ruled that the conversation was inadmissible hearsay. Defendant's attorney then made an offer of proof that defendant would testify that Cannata telephoned him to inquire if the house was still available, and he asked defendant to meet him at the dealership on the following day, which was the day of the incident. Defendant then testified that when he arrived at the dealership, Cannata approached him and introduced Mueller to him as a friend. Defendant stated that Cannata and Mueller walked away, and Cannata's girlfriend, who was also at the dealership, handed defendant a package. Cannata and Mueller returned, and Cannata took the package from defendant and handed it to Mueller. Shortly thereafter, defendant was arrested.

Defendant testified that he did not know Downs prior to his arrest, and he was not involved in a conspiracy. He also stated that the cocaine recovered did not belong to him, and he denied knowing what the package contained when it was in his possession. Defendant further testified that his only reason for being at the dealership was to talk with Cannata about the sale of his brother's house.

I

Defendant's first contention relates to the trial court's exclusion of a portion of his testimony. During the State's case in chief, the trial

court allowed the introduction of inculpatory statements of an alleged co-conspirator. Defendant, however, was prohibited from testifying to his exculpatory conversation with the same person. He claims that this ruling by the trial court was reversible error. During his direct examination, Mueller testified that when he arrived at the dealership, Cannata informed him that his "connect" was there with the package. He then introduced Mueller to defendant. The trial court allowed admission of Cannata's out-of-court statements based on the co-conspirator exception to the hearsay rule. When defendant testified in his own behalf, he stated that he had known Cannata for 10 years and that Cannata had expressed interest in buying a house that defendant's brother had for sale. When defendant started to testify to a conversation with Cannata relative to the intended sale, the trial court sustained the State's objection and prohibited defendant's testimony as inadmissible hearsay. Defense counsel argued that the excluded conversation was necessary to defendant's theory of defense. He then made an offer of proof that defendant would testify that he received a telephone call from Cannata, and that Cannata asked defendant if his brother's house was still available. During this conversation, defendant agreed to meet Cannata at the dealership the next day to discuss the purchase of the property.

■■ ■ Hearsay is defined as testimony of an out-of-court statement which is offered to establish the truth of the matter asserted. With certain exceptions, such testimony is inadmissible at trial because the party against whom it is offered has no opportunity to test the absent declarant's credibility. (*People v. Jones* (1983), 114 Ill. App. 3d 576, 589, 449 N.E.2d 547, 557.) However, statements which would be hearsay if offered for the truth of the matter asserted may be admissible if offered for the limited purpose of explaining another's conduct. *People v. Pirrello* (1988), 166 Ill. App. 3d 614, 619, 520 N.E.2d 399, 403; *People v. Jones* (1983), 114 Ill. App. 3d 576, 589, 449 N.E.2d 547, 557.

■■ Defendant argues that the excluded conversation was admissible for the limited purpose of explaining his presence at the scene of the incident. The State argues that, although defendant sought admission of the conversation to explain his presence at the dealership, he also sought to prove the truth of the substance of the conversation.

Both parties cite *Pirrello* (1986), 166 Ill. App. 3d 614, 520 N.E.2d 399, in support of their argument. In *Pirrello*, the defendant admitted killing the victim, Mark Thomas, but testified that he shot him in self-defense. Melissa Bouma, a prosecution witness, testified that she last saw Thomas on the day of the shooting at a bar where they had ar-

ranged to meet. Bouma arrived first, and when Thomas arrived, he was called over to a table where defendant and a man known as Allen were seated. Over defendant's objection, Bouma testified that she overheard Allen ask Thomas if he could get some cocaine for defendant. Thomas agreed to take the defendant to a friend who had cocaine, and they left the bar together. Thomas' body was subsequently found at a gun club. When the defendant tried to testify to his version of the conversation with Thomas and Allen, the trial court ruled that the conversation was inadmissible hearsay. Defense counsel then made an offer of proof that the conversation was about a gun that Thomas wanted to purchase from defendant and not about the sale of drugs as the State maintained.

On appeal, the State argued that Bouma's testimony regarding the conversation was admissible for the limited purpose of explaining defendant's conduct. The second district reasoned:

"Thus, if the State had only utilized the out-of-court statements for the reasons argued on appeal, no hearsay problem would be presented. But, as defendant notes, the State specifically argued to the jury that the shooting was drug related, characterizing Bouma's testimony as 'hard evidence they were involved in some kind of drug deal.' *** The State's argument thereby obviated the nonhearsay use of Bouma's testimony and created a strong possibility that the jury would view the statements as proving the truth of the matters therein." *Pirrello*, 166 Ill. App. 3d at 619, 520 N.E.2d at 403.

The State argues that, pursuant to *Pirrello*, defendant's testimony regarding Cannata's statements was properly excluded. The State reasons that, because the conversation directly related to defendant's theory of defense, it was offered to prove the substance of the statements. However, Bouma was not the defendant in *Pirrello*. Furthermore, the *Pirrello* court held that the defendant's version of the conversation should have been admitted because it was not hearsay, and it was offered to show defendant's state of mind when he left the bar with Thomas. *Pirrello*, 166 Ill. App. 3d at 619, 520 N.E.2d at 403.

Accordingly, because the court *sub judice* could have considered defendant's conversation for the limited purpose of explaining his presence at the dealership, the exclusion of defendant's testimony of Cannata's statements was error.

 █ Although the trial court's exclusion of defendant's testimony regarding Cannata's statements was error, the error was harmless. "Harmless error is a technical violation of a rule of evidence not

considered a sufficient basis for reversal because the admission or exclusion did not affect the substantial right of a party. [Citations.] ***
[E]rror can be harmless if other properly admitted evidence overwhelmingly supports the conviction or if the excluded evidence is cumulative or merely duplicates properly admitted evidence." (*People v. Demeron* (1987), 153 Ill. App. 3d 440, 446, 505 N.E.2d 1222, 1226, citing *People v. Wilkerson* (1981), 87 Ill. 2d 151, 157, 429 N.E.2d 526, 528.) During the State's case in chief, Investigator Mueller testified that he was informed by Downs that the drug transaction would take place at the dealership. When he arrived at the dealership, Cannata said that his "connect" was there with the cocaine, and he introduced Mueller to defendant. Shortly thereafter, defendant handed a package to Mueller, who inspected the contents and found white squares of cocaine. According to Mueller's testimony, defendant then said that it was "pure key" and that Mueller would be happy. While defendant denies any knowledge or participation in the transaction, the credibility of the witnesses is for the trier of fact. (*People v. Collins* (1985), 106 Ill. 2d 237, 261-62, 478 N.E.2d 267, 277.) Therefore, even if the trial court had allowed the admission of defendant's testimony of Cannata's portion of the conversation, there was still sufficient other evidence to support defendant's conviction beyond a reasonable doubt. Furthermore, defendant was able to testify to his portion of the excluded conversation as well as his explanation of why he was at the dealership on the day of the incident. Therefore, the conversation was cumulative, and its exclusion was harmless error.

Based on our conclusion that the trial court's prohibition of defendant's conversation with Cannata was harmless error, we need not address defendant's remaining arguments that the conversation was admissible under the co-conspirator exception to the hearsay rule or the doctrine of completeness.

II

Defendant next contends that his conviction for calculated criminal drug conspiracy should be reversed because the State failed to present sufficient evidence that he conspired with two or more individuals, that he obtained anything of value in excess of $500 or that he organized, directed or financed a conspiracy. The offense of calculated criminal drug conspiracy is governed by section 405 of the Controlled Substances Act, which provides:

"(b) *** a person engages in a calculated criminal drug conspiracy when:
***

(2) such violation is a part of a conspiracy undertaken or carried on with two or more other persons; and

(3) he obtains anything of value greater than $500 from, or organizes, directs or finances such violation or conspiracy." Ill. Rev. Stat. 1987, ch. 56½, par. 1405(b).

See also *People v. LeShoure* (1985), 139 Ill. App. 3d 356, 361, 487 N.E.2d 681, 684; *People v. Shimkus* (1985), 135 Ill. App. 3d 981, 987, 482 N.E.2d 194, 197.

■ The State claims that there was sufficient evidence to prove that defendant conspired with two other people because Downs introduced Mueller to Cannata, Cannata introduced Mueller to defendant, and the three of them conspired to sell Mueller the cocaine. The State bases its contention on the premise that the existence of an agreement may be inferred from the surrounding facts and circumstances, including the conspirators' conduct. *People v. Abdennabi* (1987), 157 Ill. App. 3d 979, 985, 511 N.E.2d 719, 723; *People v. Saldana* (1986), 146 Ill. App. 3d 328, 334, 496 N.E.2d 757, 762.

Defendant cites *People v. Harmison* (1985), 108 Ill. 2d 197, 204, 483 N.E.2d 508, 511, in support of his argument that the evidence was insufficient to prove that he conspired with two or more people because, even if defendant knew that Mueller was introduced to Cannata by Downs, that fact alone was insufficient to prove beyond a reasonable doubt that defendant conspired with Downs. *Harmison*, 108 Ill. 2d at 202, 483 N.E.2d at 511.

In *Harmison*, the defendant asked his codefendant, Robert L. Dubois, to obtain cocaine from a man known as Pete Lowe. Defendant told Dubois that he could not go to Lowe himself because he still owed Lowe money for cocaine previously purchased. The supreme court affirmed the appellate court's ruling that the State failed to prove beyond a reasonable doubt that defendant and two other people conspired to obtain the cocaine. "[T]he fact that defendant knew that Dubois would obtain the cocaine from Lowe was not sufficient to prove that Lowe was the third person in the *** conspiracy." (*Harmison*, 108 Ill. 2d at 202, 483 N.E.2d at 511.) The court then ruled that subsection (b)(2) of the calculated criminal drug conspiracy statute "clearly requires that [a] defendant agree with 'two or more *** persons.' " *Harmison*, 108 Ill. 2d at 204, 483 N.E.2d at 511.

In the instant case, there is no evidence that defendant had any prior contact with Downs or knew of his existence. Therefore, pursuant to the reasoning in *Harmison*, the fact that Downs had contact with Cannata and Cannata had contact with defendant was not sufficient to prove that defendant conspired with Downs.

■ Defendant also contends that the State failed to prove beyond a reasonable doubt that he obtained anything of value greater than $500 from or that he organized, directed or financed a violation or conspiracy. In *Shimkus*, the court addressed the meaning of the language in section 405(b)(3) of the Controlled Substances Act. The court held that the statute requires proof that defendant's share of the proceeds from the transaction exceeds $500. "The word 'obtain' is not defined in the statute. In its ordinary and popular meaning 'obtain' means 'to gain or attain possession *** by some planned action or method.' [Citation.] Therefore, to commit the offense of calculated criminal drug conspiracy, defendant must have gained possession of something of value in which his share of the proceeds was greater than $500." *Shimkus*, 135 Ill. App. 3d at 988, 482 N.E.2d at 199; see also *People v. Biers* (1976), 41 Ill. App. 3d 576, 581, 353 N.E.2d 389, 392.

In discussing the jury instructions relative to this subsection of the statute, the *Shimkus* court stated: "Moreover, review of the instructions tendered to the jury *** warrants the conclusion that the jury properly understood that defendant himself, and not just the conspiracy as a whole, was required to have received something of value greater than $500." *Shimkus*, 135 Ill. App. 3d at 989, 482 N.E.2d at 199.

■ The State contends that defendant received something of value greater than $500 because he supplied 953.47 grams of cocaine, the sale price was $35,000 and the street value was $200,000. The State concludes that this evidence was sufficient to prove that defendant received something of value pursuant to the requirement of the statute. However, contrary to the State's contention, there is no evidence of what, if anything, defendant was to receive, and he was arrested before he received any money. Therefore, defendant never obtained anything of value greater than $500 from the transaction.

■ ■ There is also insufficient evidence that defendant organized, directed or financed a violation or conspiracy. The court in *People v. Lucas* held: "In order to prove that the defendant either organized or directed a conspiracy to deliver a controlled substance there must be evidence which shows, in substance, that the defendant either had sufficient influence over his coconspirators to be in a position to systematize their activities or to give orders or instructions that would to some extent be binding." (*People v. Lucas* (1975), 33 Ill. App. 3d 309, 314-15, 337 N.E.2d 103, 107.) The *Lucas* court also held that the degree to which a defendant participates in a transaction must be measured against the amount of participation of the other

parties. *Lucas*, 33 Ill. App. 3d at 315, 337 N.E.2d at 107.

In the instant case, Mueller arranged the transaction through communication with Downs and Cannata. There is no evidence that defendant had any part in the transaction until he was introduced to Mueller at the dealership and handed him the contraband. This evidence is insufficient to prove that defendant organized or directed the transaction. Furthermore, although defendant delivered the cocaine to the dealership, there is no evidence that the cocaine belonged to him, or that he otherwise financed the transaction.

For these reasons, we conclude that the State failed to prove each of the elements of calculated criminal drug conspiracy beyond a reasonable doubt. Therefore, defendant's conviction for this offense is reversed.

### III

The final issue is whether defendant's convictions for delivery of a controlled substance and possession of a controlled substance with the intent to deliver should be reversed where these convictions were based on the same conduct which gave rise to his conviction for calculated criminal drug conspiracy. The State concedes that if defendant's convictions for calculated criminal drug conspiracy is affirmed, the remaining two convictions should be vacated. However, defendant's conviction for calculated criminal drug conspiracy is reversed. Because we have concluded that the trial court's exclusion of a portion of defendant's testimony was not reversible error, the convictions for delivery and possession of a controlled substance still stand. Therefore, the remaining question is what determination should be made as to the other two convictions.

Prejudice to a defendant results when he is convicted of more than one offense based on the same conduct and one offense is a lesser included offense of the other one. *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 845; *People v. Dale* (1985), 137 Ill. App. 3d 101, 104, 484 N.E.2d 459, 462; *People v. Lane* (1985), 133 Ill. App. 3d 215, 220, 478 N.E.2d 1160, 1164.

In this case, possession of a controlled substance with the intent to deliver is a lesser included offense of delivery of a controlled substance. In addition, both convictions are based on evidence that defendant had the cocaine in his possession and handed the package containing the cocaine to Mueller. Therefore, the conviction for possession of a controlled substance with the intent to deliver is vacated, and the conviction for delivery of a controlled substance is affirmed. Because the six-year sentence imposed by the trial court for

delivery of a controlled substance is the minimum sentence defendant could receive, no prejudice will result by our affirmance of the sentence. See *Shimkus*, 135 Ill. App. 3d at 990, 482 N.E.2d at 200.

Accordingly, the judgment of the circuit court regarding defendant's conviction for calculated criminal drug conspiracy is reversed. His conviction for possession of a controlled substance with the intent to deliver is vacated, and his conviction for delivery of a controlled substance is affirmed.

Judgment reversed in part, vacated in part, and affirmed in part.

McNAMARA and EGAN, JJ., concur.