THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SAUL MELGOZA, Defendant-Appellant.

First District (6th Division)   No. 1—89—3464

Opinion filed June 19, 1992.

Serpico, Novelle & Navigato, Ltd., of Chicago (Robert A. Novelle and Phillip M. Angelini, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Monica L. Willis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LaPORTA delivered the opinion of the court:

Defendant was arrested after undercover police were involved in one drug purchase May 18, 1988, and an attempt at another drug purchase May 25, 1988. Defendant was alleged to have provided the drugs for sale in both instances. Although not consolidated, the two drug cases were tried together in a bench trial. Defendant was found guilty of calculated criminal drug conspiracy, armed violence and possession of a controlled substance with intent to deliver for the May 25 incident and guilty of conspiracy and delivery of a controlled substance for the May 18 incident. He was sentenced to 10 years in prison on each conviction with the sentences to run concurrently. Jose Jiminez, his codefendant, was found not guilty at the close of the State's proofs.

On appeal, defendant contends the State's evidence failed to prove him guilty beyond a reasonable doubt on each of the five charges. Defendant also contends the court erred when it admitted into evidence hearsay statements made by an alleged co-conspirator. Finally, defendant contends he was denied effective assistance of counsel.

Defendant and an alleged co-conspirator, Jose Jiminez, were tried on October 20, 1989. The following information was adduced at trial.

Chicago police officer James Ahern testified that he was assigned to the Organized Crime Unit Narcotics Division. Ahern testified he was involved in a narcotics investigation on May 18, 1988, and was at the police station when his personal beeper activated to notify him that he had a phone message. He testified that he called the number on the beeper, recognizing the voice on the other end of the line as that of a young man named "Vic" with whom he had previously dealt.

Ahern testified that after he spoke with Victor, and at about 3 p.m., he and his partner, Officer Sheppard, drove their unmarked squad car to approximately 2300 W. 50th Street. They parked near a viaduct. Victor approached the car. When the State attempted to question Ahern about his conversation with Victor, defense counsel's objection was sustained. The State argued the conversation was admissible as a co-conspirator statement and the court then overruled the defense objection.

Ahern testified that he told Victor he wanted to buy an ounce of cocaine. Ahern testified that Victor told him "his guy was on the way to my location with the cocaine." Victor then left his sight and when he came back, he told him "his guy, his connect hasn't arrived yet but he is on the way." Victor left again, and when he returned the second time, he handed Ahern an album cover and told him the cocaine was inside. Ahern testified that he found a plastic bag with white powder inside, later identified as cocaine. He handed Victor $1,000 and then he and his partner drove away. The cocaine was admitted into evidence.

Ahern then testified that on May 25, 1988, he contacted Victor by phone, asking him to arrange for Ahern to purchase a kilogram of cocaine and 25 pounds of marijuana. Later in the day, he received a beeper page from Victor at approximately 5 p.m., and he and his partner then drove to a Pizza Hut restaurant at 5900 S. Western Avenue in an unmarked car.

Ahern testified that Victor got into the car and then told the two officers that he had the cocaine but not the marijuana. They agreed to a price of $25,000 for the purchase of a kilo of cocaine. Ahern had the

money with him in prerecorded bills. Victor counted the money. Ahern testified that Victor said that "he had to bring the money to his guy and that the kilo was in his guy's car under the hood." Ahern testified that he did not give the money to Victor but instead he put the $25,000 in the trunk of his car and gave Victor the key. Victor left, walking north on Western Avenue out of Ahern's sight. Victor then returned to the car and stated "we can't do the deal here, we have to do it somewhere else." Victor left the area.

Ahern reported what had transpired by police radio to surveillance officers on the scene, who told him to leave the area because surveillance officers had learned that one of the persons involved in the transaction was armed and Ahern had $55,000 in cash with him. Ahern testified that he then left the scene and within minutes the defendant, Jiminez and Victor were arrested by surveillance and other officers near the scene. Ahern then joined his fellow officers at the place of arrest.

After Ahern read his *Miranda* rights to them, Victor admitted to him that he and the defendants were going to rob the officers. Ahern testified on cross-examination that defendant did not make a verbal response to Victor's admission about an intended robbery. Ahern testified he never had any conversations with Jiminez at any time and that on May 25, Victor did not mention Jiminez' name. Ahern first saw Jiminez after the defendants and Victor were placed under arrest. He acknowledged that he did not see Jiminez in possession of either a weapon or narcotics nor did he see him in the car in which the narcotics were found. Ahern testified there were two cars at the scene of the arrest, but he did not remember to whom they belonged.

The second State witness, Chicago police officer Wayne Taveggia, stated that on May 18, 1988, he was working narcotics surveillance duty outside a home at 2100 W. 50th Place. Officers Ahern and Sheppard were in an undercover vehicle somewhere in the vicinity for the purchase of narcotics. On that day, Taveggia saw a teenager he knew named Victor leave the residence at 2100 W. 50th Place walking westbound on 50th Street, enter a viaduct and leave his sight. Victor returned several minutes later, sat on the stoop at the side door of the residence and a few minutes later got into a tan Cadillac driven by defendant and then drove away. When the vehicle returned, only the defendant was inside. Defendant parked the car and remained seated in the driver's seat. Taveggia testified that Victor returned to the area a short time later and walked west on 50th Street under the viaduct and Taveggia lost sight of him. Several minutes later Victor returned, walked up to defendant's car and spoke to defendant, who

was still seated in the car. Victor had nothing in his hands when he approached the car. Taveggia testified that Victor "then reached inside the car and walked away carrying a record album." Taveggia testified that Victor then walked westbound toward the viaduct and went out of sight. When he returned he was still carrying the record album. He again waited at the side door of the residence. Several minutes later the Cadillac returned, driven by defendant. Victor got back into defendant's car and they drove out of sight.

Taveggia testified that on May 25, 1988, at approximately 6 p.m. he was working surveillance about 150 feet north of the Pizza Hut restaurant at 5900 S. Western Avenue where he could see Ahern and his partner in their car. The officers were there to make an undercover purchase of drugs. Taveggia testified that 5 or 10 minutes later he saw the same tan Cadillac he had seen on May 18 arrive in the vicinity with defendant in the driver's seat and Victor in the passenger seat. He testified that Victor left the car, walked to the parking lot where Ahern and Sheppard were parked and spoke with them. He then walked back to defendant's car, which was parked half a block west. Defendant was standing outside the car. Defendant and Victor had a short conversation, then walked to the parking lot of a nearby Kentucky Fried Chicken restaurant north of the Pizza Hut. There they met Jiminez and all three engaged in conversation. Taveggia testified that Victor then walked back to the parking lot where Ahern was parked, spoke to him, then left and Ahern and his partner drove away. Defendant and Jiminez were still standing in the Kentucky Fried Chicken parking lot. Then Victor and defendant ran to defendant's Cadillac parked about a block west and Jiminez got into his own car. Both vehicles then proceeded eastbound on 59th Street and southbound on Western in the same direction Ahern had driven.

Taveggia testified that a few minutes later both cars were "curbed." Police confiscated a tan bag containing a kilogram of cocaine from under the hood of defendant's car. He also testified that "Officer Digman recovered a .357 magnum from the back of that Cadillac." He testified that nothing was recovered from the persons of defendant or Jiminez nor from Jiminez' car.

On cross-examination, Taveggia testified that in his surveillance on May 18, he did not see Jiminez and that on May 25, he did not see Jiminez have any conversation with Ahern or Sheppard.

On further cross-examination by defendant's attorney, Taveggia recounted his testimony about events he observed at about 2 p.m. on May 18, 1988, when he saw Victor sitting at the side door of his residence, then get up, walk down the street, go into the viaduct, out of

his sight and then return four or five minutes later. Victor waited for about five minutes when Taveggia saw the defendant, whom he had never seen before, drive up to the house, Victor got in the car and they drove away. He repeated his testimony that the defendant shortly thereafter returned to the scene in his car and Victor returned on foot and empty handed. Victor and defendant had a conversation, then Victor reached into the vehicle, removed something, walked toward and into the viaduct and then returned to defendant's vehicle a few minutes later and the car drove off. Taveggia admitted that he could not hear any conversations that took place and that he was about three-quarters of a block from defendant's car when he saw Victor take something from inside the car.

Taveggia recounted his testimony about the May 25, 1988, surveillance in which he participated and stated that the defendant and Jiminez were arrested in a Dunkin Donuts parking lot in the 6100 block on Western Avenue when his surveillance indicated they were leaving the area at 59th and Western, the Kentucky Fried Chicken parking lot. When asked where the gun was located in the car, Taveggia responded, "I am not exactly certain. I didn't recover the weapon. I know it was in the back seat." He testified he did not see the defendant with the weapon during his surveillance.

The parties stipulated to the fact that the tan Cadillac and its license plates were registered to defendant, and that the white powder recovered during both the May 18 and May 25 incidents was cocaine, and that the chain of custody was proper and correct at all times. The State then rested.

Jiminez' attorney moved for a directed finding of not guilty, and the judge granted the motion. The judge granted defendant's motion for a finding of not guilty on count III of the May 18 indictment, which alleged that defendant used an underage person to deliver a controlled substance, finding that the State presented no evidence on the charge.

The defense rested without presenting any evidence. The State and the defense made closing arguments. The court found defendant guilty of possession of a controlled substance with intent to deliver, armed violence, and calculated criminal drug conspiracy for the activity that occurred May 25. Defendant was also found guilty of delivery of a controlled substance and of conspiracy for the activity that occurred May 18. Defendant was sentenced to 10 years on each conviction with the prison sentences to be served concurrently.

The court denied defendant's motion for a new trial and defendant appeals, contending initially that he was not proven guilty beyond a reasonable doubt of calculated criminal drug conspiracy.

On appeal, defendant raises the following issues: (1) whether the evidence was sufficient to convict the defendant of possession of a controlled substance with intent to deliver, armed violence and calculated criminal drug conspiracy for the events of May 25, 1988, as charged in indictment No. 88—13239; (2) whether the evidence was sufficient to convict the defendant of delivery of a controlled substance and conspiracy for the events of May 18, 1988, as charged in indictment No. 88—13240; (3) whether the court erred in admitting statements of an alleged co-conspirator implicating defendant, when the State failed to establish the existence of the conspiracy by non-hearsay evidence; and (4) whether defendant was denied effective assistance of counsel where trial counsel allowed the consolidation of two Class X offenses for a bench trial, filed no pretrial motions, conducted minimal cross-examination of the State's two witnesses, failed to challenge the State's proofs of conspiracy, calculated criminal drug conspiracy, armed violence and other proofs offered and failed to object to the court's errors in sentencing.

Indictment No. 88—13239 charged defendant with calculated criminal drug conspiracy, possession of a controlled substance with intent to deliver and armed violence for events which are alleged to have occurred on May 25. Indictment No. 88—13240 charged defendant with conspiracy and delivery of a controlled substance for events which are alleged to have occurred on May 18.

STANDARD OF PROOF

Defendant contends that the proper standard of review where the evidence against the defendant is circumstantial requires a determination that the conclusion drawn by the trier of fact has been reached only after excluding every reasonable hypothesis other than guilt. (*People v. Persinger* (1977), 49 Ill. App. 3d 116, 122, 363 N.E.2d 897.) The Illinois Supreme Court, however, in 1985 specifically rejected the *Persinger* standard as no longer viable and adopted the reasonable doubt test to affirm a conviction based on circumstantial evidence. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.) The *Collins* court specifically stated:

> "When presented with a challenge to the sufficiency of the evidence ***[ ]*** 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found [the State had proven]

the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d at 261, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.

The *Collins* standard has been applied to criminal cases consistently since its adoption. (See *People v. Pintos* (1989), 133 Ill. 2d 286, 291, 549 N.E.2d 344; *People v. Linscott* (1986), 114 Ill. 2d 340, 348, 500 N.E.2d 420, *vacated on different grounds* (1991), 142 Ill. 2d 22, 566 N.E.2d 1355; *People v. Eyler* (1989), 133 Ill. 2d 173, 191, 549 N.E.2d 268.) The *Pintos* court, citing *Collins*, held that proof beyond a reasonable doubt test should be applied in reviewing the sufficiency of the evidence in all criminal cases whether the evidence is direct or circumstantial. (*People v. Pintos*, 133 Ill. 2d at 291.) Accordingly, our consideration of the evidence in the record must be measured against the *Collins* standard.

### THE CO-CONSPIRATOR STATEMENT EXCEPTION TO THE HEARSAY RULE

The State called police officers Ahern and Taveggia as the sole witnesses for the prosecution. The State did not call Victor as a witness and instead, over defendant's objection, elicited testimony from Officer Ahern of Victor's conversations with him on May 18 and on May 25, implicating defendant in the drug transactions. Victor did not refer to defendant by name in these conversations. Defendant contends such testimony was impermissible hearsay which the trial judge erroneously admitted and that absent such testimony the evidence is insufficient to prove him guilty of any conspiracy charges on either date.

The State argues that Ahern's testimony of Victor's statements to him at the time both drug transactions were in progress, which were made to Ahern out of defendant's presence, clearly falls within the co-conspirator exception to the hearsay rule. The State contends that admission of this testimony was not error.

Defendant was charged with and has been convicted, among other offenses, of conspiracy in the delivery of 27.7 grams of cocaine on May 18 (Ill. Rev. Stat. 1987, ch. 38, par. 8—2) and with calculated criminal drug conspiracy involving an attempted delivery of 999.7 grams, approximately a kilo, of 96.9% pure cocaine on May 25 (Ill. Rev. Stat. 1987, ch. 56½, par. 1405).

Key to the State's case against the defendant on the conspiracy charges are the out-of-court statements, made by Victor, to undercover narcotics officer Ahern while the drug transactions were in pro-

gress. If we find the testimony is admissible, the evidence supporting conviction is substantially stronger.

To establish a *prima facie* case for any conspiracy, the State is required to prove that two or more persons intended to commit a crime, that they engaged in a common plan to accomplish the criminal goal and that an act or acts were done by one or more of them in furtherance of the conspiracy. (*People v. Pintos*, 133 Ill. 2d 286, 549 N.E.2d 344.) A conspiracy thus is a criminal agreement to commit a separate criminal act or acts. We conclude, therefore, that the conspiracy itself is a crime whether or not the purpose of the conspiracy is accomplished.

Existence of the conspiracy agreement may be inferred from all surrounding facts and circumstances including the acts and declarations of the accused. (*People v. Pintos*, 133 Ill. 2d at 292; *People v. Soteras* (1987), 153 Ill. App. 3d 449, 453, 505 N.E.2d 1134.) Proof of a conspiratorial association may be circumstantial. *United States v. Cicale* (2d Cir. 1982), 691 F.2d 95.

The testimony of an undercover police officer can serve as circumstantial evidence that a conspiracy to deliver narcotics existed and that defendant was an integral part of that conspiracy where out-of-court co-conspirator statements which directly implicate others in the conspiracy are interspersed in his testimony. (*People v. Cortes* (1984), 123 Ill. App. 3d 816, 821, 463 N.E.2d 885.) In *Cortes* the independent evidence plus the co-conspirator statements proved defendant guilty of conspiracy beyond a reasonable doubt.

Where independent evidence (aside from co-conspirator statements) provides sufficient circumstantial evidence of conspiracy and that defendant was an integral part of it, the nonhearsay evidence need not be introduced prior to admission of the co-conspirator statement. *People v. Goodman* (1980), 81 Ill. 2d 278, 284, 408 N.E.2d 215; *Cortes*, 123 Ill. App. 3d at 822.

In a bench trial, as here, the court clearly could reject the co-conspirator statements if the nonhearsay evidence did not support an inference that the defendant was part of a conspiracy.

We find instructive the analysis in *Bourjaily v. United States* (1987), 483 U.S. 171, 97 L. Ed. 2d 144, 107 S. Ct. 2775, in which the Court admitted taped out-of-court statements as to the participation of the accused in an alleged conspiracy for a drug sale. In *Bourjaily*, a government informant arranged to sell a kilo of cocaine to Leonardo. Leonardo agreed to find individuals to distribute the drugs. In a taped telephone conversation with the informant, Leonardo stated he had found someone who had questions about the drugs. In

subsequent taped telephone conversations, Leonardo spoke with Greathouse, an intermediary, and reached agreement as to quantity, price, the place and the manner in which the sale was to take place by transfer of the drugs to purchaser's (Bourjaily's) car. The transaction occurred as planned and police arrested Leonardo and Bourjaily immediately after money was paid and drugs were placed in the car. Over defense objection the prosecution introduced into evidence Leonardo's telephone conversations regarding defendant's participation in the transaction. The trial court found that testimony of the events in the parking lot together with Leonardo's statements over the phone established by a preponderance of the evidence that a conspiracy involving Leonardo and defendant existed, that Leonardo's statements had been made in furtherance of the conspiracy, and therefore the statements satisfied Rule 801(d)(2)(E) and were not hearsay.

On appeal, the *Bourjaily* Court discussed Federal Rule 801(d)(2)(E), which provides:

> "A statement is not hearsay if—
>
> * * *
>
> The statement is offered against a party and is * * * a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." (Fed. R. Evid. 801(d)(2)(E).)

The Court also discussed Federal Rule 104(a), which relates to questions of admissibility generally and provides:

> "Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges [as in subdivision (b)]." Fed. R. Evid. 104(a).

In a discussion relative to the admissions of a co-conspirator's statements made in phone conversations tape-recorded by the government and their admissibility against the defendant who is accused of narcotics crimes, the *Bourjaily* majority held that under Rule 104(a) of the Federal Rules of Evidence, a court is permitted to consider out-of-court statements of an alleged co-conspirator in taped telephone conversations as to the participation of the accused in a drug sale when making its preliminary factual determinations as to (1) whether a conspiracy existed, and (2) whether accused and declarant were members of such a conspiracy. The Court held that, where there is a dispute as to such preliminary facts, the party offering the out-of-court statements must prove those facts by a preponderance of the evidence but not by a higher standard of proof. The majority con-

cluded that the constitutional guaranty of the right of confrontation does not require an independent showing of reliability as a condition for admitting out-of-court statements of a co-conspirator against the accused where the statements satisfy the requirements of Federal Rule 801(d)(2)(E). The Court further concluded that the district court's finding, *i.e.*, that proof of the conversations and subsequent events established by a preponderance of the evidence that the purchaser was involved in a conspiracy with the accused, was not error. *Bourjaily*, 483 U.S. at 181, 97 L. Ed. 2d at 156, 107 S. Ct. at 2781-82.

In a specially concurring opinion, Justice Stevens expressed the view that under Federal Rule 104(a), a declarant's out-of-court statement is inadmissible against his accused co-conspirator unless there is some *corroborating* evidence to support the conclusion that there was a conspiracy among those accused, the declarant was a member of the conspiracy and the statement furthered the objectives of the conspiracy. *Bourjaily*, 483 U.S. at 184, 97 L. Ed. 2d at 158, 107 S. Ct. at 2783 (Stevens, J., concurring).

The dissenting justices expressed the view that the Federal Rules of Evidence did not change the requirement that preliminary questions of fact relating to admissibility of a nontestifying co-conspirator's statement must be established by evidence independent of the statement itself; that such independent evidence is needed to safeguard its reliability; and that the confrontation clause requires independent indicia of reliability for admission of a nontestifying co-conspirator's statement. *Bourjaily*, 483 U.S. at 199-200, 97 L. Ed. 2d at 168, 107 S. Ct. at 2791 (Blackmun, J., dissenting, joined by Brennan and Marshall, JJ.).

While one might hope the Illinois Supreme Court would adopt rules of evidence similar to Federal Rules 801(d)(2)(E) and 104(a) to aid State prosecutors in their efforts to contain the expanding traffic in narcotics, our case authority requires a degree of proof consistent with the *Bourjaily* dissent in order to admit a co-conspirator's out-of-court statements into evidence.

Here, no witness testified he heard any conversation among the co-conspirators about a conspiracy on either date. Rarely do conspirators make their plans openly or so as to be overheard.

Because of the clandestine nature of conspiracy, the courts have permitted broad inferences to be drawn from the circumstances, acts and conduct of the parties. (*People v. Bailey* (1975), 60 Ill. 2d 37, 45, 322 N.E.2d 804; *People v. Abdennabi* (1987), 157 Ill. App. 3d 979, 985, 511 N.E.2d 719; *People v. Mordick* (1981), 94 Ill. App. 3d 497,

500, 418 N.E.2d 1057.) The mere presence of the accused at the scene, without more, is insufficient to establish his participation in a conspiracy. *People v. Duckworth* (1989), 180 Ill. App. 3d 792, 795, 536 N.E.2d 429.

■ While proof of a conspiratorial association may be circumstantial and existence of the conspiracy agreement may be inferred from all surrounding facts and circumstances, including the acts and conduct of the conspiring parties, before a co-conspirator's out-of-court statement will qualify as an exception to the hearsay prohibition, there must be a showing of sufficient, substantial and independent nonhearsay evidence that a conspiracy existed. (*Goodman*, 81 Ill. 2d at 283; *People v. Steidl* (1991), 142 Ill. 2d 204, 233, 568 N.E.2d 837; *United States v. Nixon* (1974), 481 U.S. 483, 41 L. Ed. 2d 1039, 94 S. Ct. 3090.) If the joint venture/conspiracy has been established by such nonhearsay evidence, statements made by a nontestifying co-conspirator during the course of and in furtherance of the conspiracy may be admitted as evidence against the accused. *People v. Goodman*, 81 Ill. 2d at 283; *People v. Rogers* (1984), 122 Ill. App. 3d 384, 391; *Steidl*, 142 Ill. 2d at 234.

Their suspicious activities together while the illegal transaction was in progress are sufficient to show a joint venture together. *United States v. Mendell* (7th Cir. 1971), 447 F.2d 639, 642.

Where the co-conspirator himself had knowledge of the facts, and made statements spontaneously about contemporaneous events in furtherance of the conspiracy while carrying out the intended criminal acts of the conspiracy, his statements are admissible against all conspirators upon an independent *prima facie* evidentiary showing of conspiracy or joint venture between declarant and defendant. *Goodman*, 81 Ill. 2d at 283, 285-86.

The confrontation clause discussed in *Bruton v. United States* (1968), 391 U. S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, was not violated by the admission of co-conspirator statements which qualified as exceptions to the hearsay rule because defendants were able to confront and cross-examine the officer witness who alleged that the statements were made. *Goodman*, 81 Ill. 2d at 284.

CALCULATED CRIMINAL DRUG CONSPIRACY

We direct our first discussion to the charge against defendant of calculated criminal drug conspiracy for the events of May 25.

The Illinois criminal law statute provides that a person is guilty of participating in a calculated criminal drug conspiracy when: "(1) he violates any of the provisions of subsections (a) or (b) of Section 401

[the manufacture or delivery of certain controlled substances including cocaine] or subsection (a) of Section 402 [possession of certain controlled substances]; and (2) such violation is part of a conspiracy undertaken or carried on with two or more other persons; and (3) he obtains anything of value greater than $500 from, or organizes, directs or finances such violation or conspiracy." Ill. Rev. Stat. 1987, ch. 56½, pars. 1405 (b)(1) through (b)(3).

■ Calculated drug conspiracy requires a minimum of three conspirators as distinguished from simple conspiracy, which requires a conspiratorial agreement between two persons. (*People v. Harmison* (1984), 124 Ill. App. 3d 236, 239, 463 N.E.2d 1373, *aff'd* (1985), 108 Ill. 2d 197, 483 N.E.2d 508.) To establish a calculated criminal drug conspiracy the State must prove that all three conspirators agreed together to the commission of the same offense. *People v. Foster* (1983), 99 Ill. 2d 48, 54, 457 N.E.2d 405; *People v. Ambrose* (1975), 28 Ill. App. 3d 627, 629, 329 N.E.2d 11.

To prove that a defendant organized or directed such a conspiracy to deliver a controlled substance, there must be evidence which shows that the defendant either had sufficient influence over his co-conspirators to be in a position to systematize their activities or to give orders or instructions that would to some extent be binding. *People v. Lucas* (1975), 33 Ill. App. 3d 309, 314-15, 337 N.E.2d 103.

Defendant contends on appeal that the State failed to prove that such a conspiracy existed between defendant, Victor and Jiminez on May 25. Defendant notes that Jiminez was acquitted and the State failed to present any evidence that the three agreed to do anything. He argues that no evidence was presented to tie Jiminez to either defendant or to defendant's car where the drugs were found. The defendant argues that because the trial judge acquitted Jiminez of the conspiracy charges against him, and because Victor has not been tried on a conspiracy charge, the State has failed to prove defendant guilty of calculated criminal drug conspiracy under the Illinois Controlled Substances Act (Ill. Rev. Stat. 1989, ch. 56½, par. 1101 *et seq.*).

In addition, defendant argues that the State has failed to present any evidence that would demonstrate he organized, financed, directed or obtained $500 from the conspiracy as required by statute. Defendant contends that under *Lucas* it is not enough to prove that he may have participated in a conspiracy but that the State must prove beyond a reasonable doubt that defendant organized or directed the conspiracy. *Lucas*, 33 Ill. App. 3d at 314-15.

The State argues that the evidence at trial clearly implicated both defendant and Jiminez in a drug conspiracy with Victor on May 25.

The State contends that intent to commit a criminal offense need not be expressed but may be inferred from the conduct of the defendant and the surrounding circumstances. (*Abdennabi*, 157 Ill. App. 3d at 984.) The State cites *People v. Lane* (1985), 133 Ill. App. 3d 215, 219-20, 478 N.E.2d 1160, in which the court held that it is no defense to a conspiracy charge that the person or persons with whom the accused is alleged to have conspired has or have been acquitted.

We note that subsequent to the May 1988 activities in our case the legislature codified the holding in *Lane* at section 405.1 of the Illinois Controlled Substances Act to provide that "[i]t shall not be a defense to conspiracy that the person or persons with whom the accused is alleged to have conspired: (1) Has not been prosecuted or convicted, or *** (4) Has been acquitted." Ill. Rev. Stat. 1989, ch. 56½, pars. 1405.1(b)(1), (b)(4).

The State argues that proof of the conspiracy as enunciated in *Foster* (*Foster*, 99 Ill. 2d at 54) was met when Ahern testified that Victor told him he intended to make a cocaine sale to Ahern, that Victor was seen with defendant and Jiminez a short time later and that defendant was then arrested with cocaine and a loaded handgun in his possession.

The State further argues that it presented evidence that defendant either organized or directed the conspiracy through Ahern's testimony that, on May 25, Victor, in his conversation with Ahern, referred to defendant as "his guy" and "he had to bring the money to his guy" and that "the kilo [of cocaine] was in his guy's car under the hood." The State argues that without the defendant's participation the deal could not have been consummated.

Our analysis initially requires an examination of the nonhearsay evidence produced as to the activities of the defendant, Jiminez and Victor on May 25. The evidence established that, on that date, and in furtherance of his duties as an undercover narcotics police officer, Ahern spoke with Victor by phone. Then later that day, at about 5 p.m., Victor and Ahern met at the Pizza Hut parking lot. Five or ten minutes before that, Taveggia saw defendant arrive in the area driving his tan Cadillac with Victor in the front passenger seat. Taveggia saw Victor leave defendant's car, walk to Ahern's car and speak with Ahern. Ahern testified that Victor got into Ahern's car. After a brief discussion, Victor counted the money produced by Ahern. Ahern then placed the money in his car trunk and gave Victor the trunk key. Surveillance officer Taveggia saw Victor walk north to defendant's car parked a half block away. He saw defendant and Victor have a con-

versation outside the car, then both walked north a short distance where they met Jiminez, and all three had a conversation.

Taveggia then observed Victor walk back to Ahern's car, speak with Ahern, then walk back to defendant and Jiminez as Ahern left the area, driving southbound on Western Avenue. Taveggia then observed a conversation among defendant, Victor and Jiminez, then saw Victor run to and enter defendant's car as Jiminez got into his own car. Taveggia observed both cars then proceed southbound on Western Avenue in the same direction Ahern had driven, and a few minutes later, both cars were curbed by police. Police then confiscated a kilogram of cocaine from under the hood of defendant's car and a loaded handgun from the back seat of the same car, and defendant, Jimenez and Victor were arrested. No contrary evidence was produced by defendant.

■ We conclude from this nonhearsay testimony that the State has made a sufficient *prima facie* independent evidentiary showing of conspiracy in which defendant was a participant to support the admissibility of Ahern's testimony of Victor's statements as a co-conspirator exception to the hearsay rule. *Goodman*, 81 Ill. 2d at 283; *Soteras*, 153 Ill. App. 3d at 453.

■ The State provided evidence that while negotiations to complete the narcotics sale were in progress between Victor and Ahern, twice Victor left Ahern's presence and both times surveillance officer Taveggia saw Victor speaking to defendant and Jiminez together in a nearby parking lot. Although Taveggia did not hear what was said among them, the testimony by Ahern of Victor's statements to him, *i.e.*, "he had to bring the money to his guy" and "the kilo was in his guy's car under the hood," were clearly statements about contemporaneous events which related to and were made in furtherance of the conspiracy. The statements clearly implicated defendant in the conspiracy.

When the co-conspirator statements of Victor are inserted in the nonhearsay chronology of events on May 25, we find that the total evidentiary proof produced by the State established that by prearrangement Ahern and Victor met to negotiate a specified drug "buy" for a specified price; that Victor sought to take the money to his supplier, "his guy," the defendant, but instead the money was locked in the trunk of Ahern's car; that Victor stated to Ahern that the drugs were under the hood of "his guy's" car; that Victor went to defendant and Jiminez, talked with them, and then returned to Ahern; that Victor told Ahern the deal could not be closed at that location; that Victor then returned to defendant and Jiminez; that defendant and Victor

got into defendant's car, Jiminez got into his own car and both cars drove away in the same direction Ahern had driven; and that both cars were then curbed and the drugs previously referred to by Victor were found under the hood of defendant's car, where Victor said they would be. We conclude that the evidence was sufficient to establish calculated criminal drug conspiracy.

As to whether there was sufficient proof that defendant was to obtain anything of value greater than $500 from, or organized, directed or financed, the conspiracy (Ill. Rev. Stat. 1987, ch. 56½, pars. 1405(b)(1) through (b)(3)) the trial court found defendant guilty of the charge. The evidence presented in support of this statutory requirement was testimony that Ahern was to purchase one kilo of cocaine from Victor for $2,500, that Victor said he had to take the money to "his guy," who had the cocaine under the hood of his car, and when the car was subsequently curbed, a kilo of cocaine was found in the place identified by Victor.

We find the State has met its burden of proof on the calculated criminal drug conspiracy charges involving the May 25 incident. The evidence was sufficient to establish that defendant was to realize a gain greater than $500; it was sufficient to establish that he organized, directed or financed the conspiracy by providing the narcotics and by participating in the negotiations through Victor, who acted as the conspirators' contact with the buyer.

Jiminez' acquittal at the close of the State's case does not weaken the proof of defendant's participation in a calculated criminal drug conspiracy under the holding in *Lane*. (*Lane*, 133 Ill. App. 3d at 219-20.) Jiminez was present, participated in the discussions in the parking lot while the drug negotiations were in progress and left the area simultaneously with defendant and Victor. While this appeal does not address the propriety of Jimeniz' acquittal, we find the evidence is sufficient to conclude that three persons, one of them the defendant, participated in a calculated criminal drug conspiracy on May 25.

The State has established a *prima facie* case that three persons intended to commit a crime, *i.e.*, the sale of cocaine, engaged in a common plan to accomplish that criminal goal, and one or more acts were done in furtherance of the conspiracy. (*Pintos*, 133 Ill. 2d 286, 549 N.E.2d 344.) The fact that the sale was not completed by the exchange of money for drugs before defendant and his co-conspirators were arrested does not defeat the sufficiency of the State's proof of defendant's guilt of calculated criminal drug conspiracy under the Illinois Controlled Substances Act.

POSSESSION OF CONTROLLED SUBSTANCE WITH INTENT TO DELIVER

Next we consider whether there was sufficient evidence to sustain defendant's conviction for possession of a controlled substance with intent to deliver on May 25, 1988. The Illinois criminal law statute provides that "it is unlawful for any person knowingly to *** possess with intent to *** deliver, a controlled *** substance ***. *** Any person who violates this Section *** is guilty of a Class X felony." Ill. Rev. Stat. 1987, ch. 56½, par. 1401.

In a prosecution for unlawful possession of narcotics the State must prove beyond a reasonable doubt that the defendant had either actual or constructive possession of the narcotics. (*People v. Robinson* (1968), 102 Ill. App. 2d 171, 175, 243 N.E.2d 594.) In order to establish constructive possession of illegal drugs the State must prove the defendant had immediate and exclusive control over the contraband or the place where the contraband was seized. (*People v. Mack* (1957), 12 Ill. 2d 151, 159-62, 145 N.E.2d 609, 613.) Defendant's knowledge of the presence of narcotics may be proven by evidence of acts, declarations or conduct from which inferences may be fairly drawn that he knew of the existence of the drugs at the place where they were found. *People v. Embry* (1960), 20 Ill. 2d 331, 334, 169 N.E.2d 767.

Possession and knowledge are questions of fact to be determined by the trier of fact and will not be disturbed on review unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to create reasonable doubt of guilt. (*People v. Galloway* (1963), 28 Ill. 2d 355, 358, 192 N.E.2d 370, 372.) But suspicious behavior in the vicinity where narcotics are then found is not sufficient proof of either knowledge or criminal possession to convict. (*People v. Jackson* (1961), 23 Ill. 2d 360, 364, 178 N.E.2d 320.) Nor is mere proximity sufficient to establish possession absent proof that defendant had control over the place where the narcotics were found. *People v. Richard* (1975), 34 Ill. App. 3d 621, 628, 339 N.E.2d 400.

On appeal defendant argues that the State's evidence has failed to establish his intent to deliver drugs because he was arrested while driving away from the scene of the drug negotiations and no proof of intent to deliver was offered. Defendant argues that the State presented no evidence of possession since defendant was merely present in an area where a controlled substance was found. Defendant argues that the State was required to establish that the narcotics were in the immediate and exclusive control of defendant. *Embry*, 20 Ill. 2d 331, 169 N.E.2d 767; *People v. Nettles* (1961), 23 Ill. 2d 306, 178 N.E.2d 361; *Galloway*, 28 Ill. 2d 355, 192 N.E.2d 370.

Defendant cites *People v. Roundtree* (1985), 135 Ill. App. 3d 1075, 1080, 482 N.E.2d 693, where the court held the State failed to prove defendant had constructive possession of a suitcase found on the rear seat of the car he was driving in which two passengers were riding in the back. The court stated that it was not enough to show defendant had personal, physical dominion over the place where the drugs were found but the State also must prove defendant had the intent and capability to maintain control and possession of the area. (*Roundtree*, 135 Ill. App. 3d at 1080.) Defendant cites *People v. Stewart* (1975), 27 Ill. App. 3d 520, 327 N.E.2d 287, where the court found insufficient evidence to prove possession when witnesses testified they saw defendant bend over in a parking lot but they did not see him drop anything and after he left the area drugs were found at the place where he was seen bending over.

The State argues that the facts and circumstances surrounding defendant's arrest and recovery of cocaine would permit the trier of fact to reasonably infer defendant's knowledge and possession of the drugs. Defendant was driving the automobile in which the drugs were found and the car was owned by defendant.

The State distinguishes *Stewart* and *Roundtree*, noting that in those cases, a constructive possession analysis was necessary because the defendants did not have the same control over the drugs and their location as the defendant here. In *Roundtree*, two other people were in the back seat of defendant's car when the drugs were found in the back seat. In *Stewart*, the drugs were found in a public parking lot where defendant was once seen standing.

The State argues that a constructive possession analysis is unnecessary here because the drugs were found in defendant's car and the defendant was observed driving the car at or about the time of the drug transaction. The State argues further that the intent to deliver may be reasonably inferred when the amount of cocaine defendant possessed could not be viewed as intended for personal use. *People v. Chrisos* (1986), 151 Ill. App. 3d 142, 147, 502 N.E.2d 1158.

■ We find the evidence clearly supports the trial court's finding that defendant is guilty beyond a reasonable doubt of possession of a controlled substance with intent to deliver. Here, the car belonged to defendant. It may fairly be inferred that defendant knew of the existence of the drugs under the hood of his own car at the time he was driving it. Under *Chrisos*, the court here could and reasonably did infer that defendant had no intention of using a kilogram of cocaine for personal use. The fact that he was unable to deliver the drugs at that time and was found leaving the scene had no bearing on whether he

had the required intent to deliver at an earlier point in time. We therefore affirm the trial court's conviction of the defendant for possession of a controlled substance with intent to deliver.

ARMED VIOLENCE

Defendant next alleges that the State's evidence was insufficient to sustain his conviction for armed violence. "A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law." (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2.) "A person is considered armed with a dangerous weapon *** when he carries on or about his person or is otherwise armed with a *** pistol, revolver ***." (Ill. Rev. Stat. 1987, ch. 38, par. 33A—1.) The defendant need not have used the weapon in the commission of the felony to be convicted of armed violence. *People v. Alejos* (1983), 97 Ill. 2d 502, 508, 455 N.E.2d 48.

Defendant contends that his armed violence conviction must be reversed because the weapon was not found on his person and he was not found to be "otherwise armed" with a dangerous weapon on May 25, as required by the statute.

Defendant cites *People v. King* (1987), 155 Ill. App. 3d 363, 507 N.E.2d 1285, where defendant was arrested in her apartment on drug charges and a gun was found lying on a coffee table in the bedroom where a guest was found lying on the bed. The court found that the mere physical existence of the weapon without defendant's knowledge, control or immediate access to the weapon does not fall within the meaning of the armed violence statute. *King*, 155 Ill. App. 3d at 368-69, 507 N.E.2d at 1288.

The State contends here that because the possession charge was proven beyond a reasonable doubt defendant's possession of a handgun at the time requires this court to affirm the armed violence conviction. The State argues that defendant was "otherwise armed" with a dangerous weapon because the gun was found in his car fully loaded and because defendant had control of his car and access to the weapon at the time police arrested him.

The State cites *People v. Bond* (1989), 178 Ill. App. 3d 1020, 534 N.E.2d 156, where the court found defendant had knowledge, control and access to a loaded gun stashed under a couch cushion when police entered his apartment and arrested him for possession of cocaine. Though defendant was ordered to sit on the couch by police, the court found the gun was clearly within his reach and constituted the kind of danger contemplated by the armed violence statute. *Bond*, 178 Ill. App. 3d at 1023.

Here, since defendant did not have actual possession of the gun on his person, our analysis lies in determining whether defendant had constructive possession of the gun because it was accessible to him. The only testimony with regard to the gun came from Taveggia, who stated on direct examination that another officer recovered a gun "from the back seat of that Cadillac."

On cross-examination about the location of the gun, Taveggia stated: "I am not exactly certain, I didn't recover the weapon. I know it was in the back seat." Taveggia indicated that he did not know if the gun was located under the back seat or in the trunk compartment.

Officer Digman, who retrieved the gun, did not testify and the State failed to establish that the gun was readily accessible to the defendant even though the gun was retrieved from the back seat of defendant's car.

■■ We conclude, therefore, that the State has failed to prove defendant was "otherwise armed" with a dangerous weapon and therefore we reverse defendant's conviction for armed violence. As in *Bond*, defendant here may have had knowledge of the gun. But, as in *King*, the State has failed to show that the loaded gun was readily accessible and within reach of defendant at the time police stopped him in his car and arrested him or whether it was easily within his reach from where he was seated. We therefore reverse his conviction for armed violence.

CONSPIRACY

Defendant contends that the State failed to prove him guilty of conspiracy on May 18 beyond a reasonable doubt. "A person commits conspiracy when, with intent that an offense be committed, he agrees with another to the commission of that offense. No person may be convicted of conspiracy to commit an offense unless an act in furtherance of such agreement is alleged and proved to have been committed by him or by a co-conspirator." (Ill. Rev. Stat. 1987, ch. 38, par. 8—2.) Defendant stands convicted under this statute for the May 18 drug transaction.

The requisite *mens rea* element of conspiracy is satisfied with proof of an agreement to commit an offense with an intent that the offense be committed. (*Persinger*, 49 Ill. App. 3d at 120-21.) The State also must show an overt act in furtherance of the unlawful agreement by either co-conspirator. *Persinger*, 49 Ill. App. 3d at 121.

Defendant argues that the record is devoid of evidence that he agreed to do anything on May 18. Defendant notes that the record reveals only that Victor was seen walking over to his car, leaned in and

that Victor then left carrying a record album. Victor went out of view of all the police officers when he entered the viaduct and before he exited the viaduct. He sold cocaine in the record jacket to the undercover officers. Defendant contends he was not seen handing anything over to Victor nor was he seen leaving his car and he made no statement after his arrest. Defendant concludes that the State presented no evidence to prove defendant committed an overt act as part of the conspiracy.

Defendant cites *People ex rel. Scott v. Carriage Way West, Inc.* (1980), 88 Ill. App. 3d 297, 303, 410 N.E.2d 384, *rev'd on other grounds* (1981), 88 Ill. 2d 300, 430 N.E.2d 1005, which states that mere knowledge, acquiescence, approval or attempt to perpetrate the illegal act does not constitute conspiracy. (*Scott*, 88 Ill. App. 3d at 303.) A conspiracy cannot be established by evidence of a mere relationship or transaction between defendants. *People v. Gates* (1963), 29 Ill. 2d 586, 591, 195 N.E.2d 161, *cert. denied* (1964), 377 U.S. 934, 12 L. Ed. 2d 298, 84 S. Ct. 1338.

Defendant cites *Persinger*, which holds that a conviction can be upheld if circumstantial evidence proves sufficient to establish an agreement and if the evidence does not merely raise a suspicion as to its existence. (*Persinger*, 49 Ill. App. 3d at 122.) The circumstantial evidence must be such that the conclusion drawn from it excludes every reasonable hypothesis other than guilt. (*Persinger*, 49 Ill. App. 3d at 122.) We have earlier pointed out that the exclusion of every reasonable hypothesis other than guilt test of *Persinger* has been rejected by the Illinois Supreme Court in *Pintos*. (*Pintos*, 133 Ill. 2d 286, 549 N.E.2d 344.) The present test as to whether the State has met its burden of proof is whether the State has proven the essential elements of the crime beyond a reasonable doubt, when all evidence is viewed in a light most favorable to the State. *Collins*, 106 Ill. 2d at 261.

Defendant argues that he cannot be convicted here under the general conspiracy statute (Ill. Rev. Stat. 1987, ch. 38, par. 8—2) because it is preempted by the more specific statute for calculated criminal drug conspiracy (Ill. Rev. Stat. 1987, ch. 56½, pars. 1405 (b)(1) through (b)(3)). We do not agree.

Defendant cites in support of this contention the cases of *People v. Urban* (1990), 196 Ill. App. 3d 310, 553 N.E.2d 740, *People v. Caryl* (1977), 54 Ill. App. 3d 537, 389 N.E.2d 926, and *People v. Taylor* (1974), 18 Ill. App. 3d 480, 309 N.E.2d 595. He argues that while *Urban, Caryl* and *Taylor* all dealt with charges against the accused under the Cannabis Control Act, they are equally valid in support of

his argument that defendant may not be charged under the Illinois Controlled Substances Act of the criminal code because of the legislative preemption of the Cannabis Control Act. These cases, however, were determined on the basis of the quantities of narcotics involved and thus are factually distinguishable from the charges against defendant of conspiracy to deliver and the delivery of 27.7 grams of cocaine on May 18.

■ In our earlier discussion about the calculated criminal drug conspiracy charges against defendant, we found that the State was required to prove the participation of at least three co-conspirators for conviction under the Illinois Controlled Substances Act. (Ill. Rev. Stat. 1987, ch. 56½, par. 1100 *et seq.*) In 1989, the legislature adopted section 405.1 of the Illinois Controlled Substances Act, which additionally defines criminal drug conspiracy as an agreement with another to commit certain drug offenses. (Ill. Rev. Stat. 1989, ch. 56½, par. 1405.1.) We note, however, that prior to that enactment and specifically at the time of these offenses in May 1988, a drug conspiracy involving the agreement of two people could be charged only under the Illinois Criminal Code of 1961. (Ill. Rev. Stat. 1987, ch. 38, par. 8—2.) Defendant has been charged with conspiring with Victor to sell drugs to Ahern on May 18; the indictment alleges only two people were involved on that date. Since defendant is alleged to have conspired only with Victor on that date he can be charged only with a conspiracy violation under section 8—2 of the Illinois Criminal Code. (Ill. Rev. Stat. 1987, ch. 38, par. 8—2.) We therefore reject defendant's argument on appeal that defendant could only have been charged under the Cannabis Control Act (Ill. Rev. Stat. 1987, ch. 56½, par. 701 *et seq.*) for the offenses of May 18.

■■ Defendant argues that Wharton's Rule should be applied to bar defendant's conviction for both conspiracy and delivery of a controlled substance on May 18. Wharton's Rule provides that a person may not be prosecuted for conspiracy to commit an offense when the underlying substantive offense requires more than one actor for its commission. (*People v. Urban* (1990), 196 Ill. App. 3d 310, 312, 553 N.E.2d 740, 741.) The rule has current validity only as a judicial presumption in the absence of expressed legislative enactment to the contrary. (*Iannelli v. United States* (1975), 420 U.S. 770, 782, 43 L. Ed. 2d 616, 625, 95 S. Ct. 1284, 1292.) We find the rule to be inapplicable here since defendant is charged with conspiracy under the Illinois Criminal Code (Ill. Rev. Stat. 1987, ch. 38, par. 8—2), clearly an expression of legislative intent which defeats the presumption of Wharton's Rule in this case.

Defendant also contends the court erred in admitting incriminating hearsay statements by an alleged co-conspirator testified to by Officer Ahern as to the events of May 18 because the State failed to establish the existence of a conspiracy by other nonhearsay testimony. (*Goodman*, 81 Ill. 2d at 283; *Soteras*, 153 Ill. App. 3d at 453.) Defendant contends that the court improperly permitted statements made by Victor on May 18 to remain in evidence even after the State failed to provide independent nonhearsay evidence to establish a *prima facie* case of the existence of a conspiracy between Victor and defendant. Ahern testified that on May 18 Victor told him "his guy was on the way to my location with the cocaine" and that "his connect hasn't arrived yet but he is on the way."

The State argues that there was ample evidence to establish a *prima facie* case for the May 18 conspiracy charge because Taveggia saw Victor talking with defendant, then Victor took a record album out of defendant's car while defendant was in the car and then delivered the album with cocaine in it to the undercover officers.

The State argues that a conspiracy is complete with an agreement and an overt act. (*People v. Adams* (1988), 176 Ill. App. 3d 197, 203, 530 N.E.2d 1155.) The State contends that there was "obviously an agreement" between Victor and defendant since defendant brought the cocaine to Victor to be sold to the undercover officers. The State argues that two overt acts occurred: (1) when defendant drove his car to meet Victor and (2) when he provided Victor with drugs to sell to the officers.

The trial court heard evidence produced by the State to establish two conspiracies for the sale of drugs to Ahern on May 18 and May 25. We have affirmed defendant's conviction for the May 25 conspiracy based on nonhearsay circumstantial evidence together with the co-conspirator's out-of-court statements to Ahern on that date. Because the court admitted Ahern's testimony of Victor's statements to him on May 18 as an exception to the hearsay rule and defendant has challenged the admission of that testimony, we are required to examine the nonhearsay evidence to determine whether the State has made a *prima facie* showing of conspiracy without Victor's statements. If we conclude that the nonhearsay evidence establishes a *prima facie* case of conspiracy, then Ahern's testimony about Victor's statements to him at the time the drug sale was in progress may be admitted as a co-conspirator exception to the hearsay rule.

The nonhearsay circumstantial evidence produced by the State to establish a *prima facie* case of conspiracy against defendant for May 18 is as follows: On May 18 Ahern met with Victor at a location ap-

proximately 2300 West 50th Street by prearrangement to purchase an ounce of cocaine. Victor approached Ahern's car. After a brief conversation during which Victor did not produce the cocaine, Victor walked away and into a nearby viaduct. Taveggia observed Victor exiting the other side of the viaduct. He saw Victor get into the passenger seat of a tan Cadillac driven by defendant, and the car with its two occupants left the area within Taveggia's sight. Shortly thereafter the car returned occupied only by the defendant. Victor returned on foot and went to Ahern's car, did not produce the drugs, but spoke to him and then walked back into the viaduct while Ahern waited. Taveggia then saw Victor exit the viaduct, return to the defendant's tan Cadillac, speak with defendant, then reach into the car, withdrawing an album cover. Victor then entered the viaduct, exiting on Ahern's side, and approached Ahern. He handed the album cover containing cocaine to Ahern; Ahern removed the cocaine, placed money in the album cover and returned it to Victor, who then reentered the viaduct. Taveggia observed Victor exit the viaduct, enter the passenger side of defendant's car, and defendant and Victor then drove away.

■■ We conclude from the nonhearsay evidence that the State has made a *prima facie* showing of conspiracy and defendant's involvement in it on May 18. The conspiracy having been proven by nonhearsay evidence, the court correctly admitted Ahern's testimony of Victor's statements while the drug sale was in progress as a coconspirator exception to the hearsay rule. Ahern testified that Victor told him "his guy was on the way to my location with the cocaine" and "his guy, his connect hasn't arrived yet but he is on the way." We find the statements to be have been made spontaneously about contemporaneous events and in furtherance of the conspiracy. (*Goodman*, 81 Ill. 2d at 283.) Following his statement that "his guy" was on the way with the cocaine, Victor then met with defendant, removed the album from defendant's tan Cadillac while defendant remained seated in the car and, moments later, Victor handed the record album containing the cocaine to Ahern. Clearly the nonhearsay evidence, Victor's statements and the conduct of both defendant and Victor established that defendant was Victor's "guy," "his connect." We find the evidence was sufficient to support the trial court's conclusion that defendant and Victor conspired together for the sale of the cocaine to Ahern on May 18, and we affirm the conviction.

DELIVERY OF A CONTROLLED SUBSTANCE—ACCOUNTABILITY

Our next discussion is focused on defendant's contention that the State's evidence failed to prove beyond a reasonable doubt that he

was guilty of delivery of a controlled substance on May 18, as charged in indictment No. 88—13240. The State charged that defendant was legally accountable for Victor's sale of drugs to the undercover police officers. Ill. Rev. Stat. 1987, ch. 38, par. 5—2.

The Illinois Criminal Code provides that "it is unlawful for any person knowingly to manufacture or deliver *** a controlled *** substance ***. *** Any person who violates this Section *** is guilty of a Class X felony." (Ill. Rev. Stat. 1987, ch. 56½, par. 1401.) "A person is legally accountable for the conduct of another when: *** [e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." Ill. Rev. Stat. 1987, ch. 38, par. 5—2.

To prove defendant guilty based on an accountability theory, the State must establish beyond a reasonable doubt that: (1) the defendant solicited, ordered, abetted, agreed or attempted to aid another in the planning or commission of the delivery; (2) the defendant's participation took place before or during the commission of the delivery, and (3) the defendant had the concurrent, specific intent to promote or facilitate the commission of the offense. *People v. Deatherage* (1984), 122 Ill. App. 3d 620, 624, 461 N.E.2d 631.

Mere presence does not render one accountable under the statute. (*People v. Evans* (1981), 87 Ill. 2d 77, 83, 429 N.E.2d 520.) Defendant argues that when the evidence finding defendant guilty is entirely circumstantial, the facts proven must be consistent with defendant's guilt and inconsistent with any reasonable hypothesis of innocence. (*Evans*, 87 Ill. 2d at 83.) *Evans*, however, applies the earlier standard of proof which subsequently was rejected in favor of the reasonable doubt standard of *Collins*. The fact finder may infer defendant's accountability from evidence of conduct showing a design on defendant's part to aid in the offense. *People v. Tinoco* (1989), 185 Ill. App. 3d 816, 823, 541 N.E.2d 1198.

Defendant contends that the State has not met its burden. He argues that the State provided no proof that defendant discussed narcotics, price or delivery with anyone, and that no proof was offered that defendant received money or handled any cocaine. Defendant argues that the State proved only that he was seen sitting in a car, that Victor approached the car, spoke to him, and reached inside the car before he "walked away carrying a record album."

Defendant argues further that Victor went out of view of the surveillance officers before he approached police officer Ahern on the other side of the viaduct and sold him cocaine placed in a record al-

bum jacket. Defendant argues that there is no proof Victor delivered to the undercover officers the same record album that Victor took from the car or that defendant even knew what, if anything, was in the record album. Defendant relies on *Deatherage* and *Evans* in support of his contentions that the State's proof has failed to establish defendant's guilt.

In *Deatherage,* the court found defendant's presence at a drug sale and references made about another "guy" who was involved too vague to tie defendant to a cocaine sale between an undercover police officer and a third party. (*Deatherage,* 122 Ill. App. 3d at 624.) In *Evans*, the court found the State failed to meet its burden of excluding every reasonable hypothesis of innocence where the evidence proved only defendant's presence and not the necessary intent to solicit, aid, abet or attempt to aid in the planning or commission of the offense. *Evans,* 87 Ill. 2d at 84.

In response the State argues that sufficient proof existed for defendant's conviction based on a theory of accountability, because defendant drove the car from which Victor was seen taking the drugs, conceded that he was the registered owner of the car, was the only one in the car at the time and then drove Victor away from the scene after Victor sold drugs to the undercover agents. The State argues that this evidence shows complicity and participation of a much greater degree than the defendant's mere presence at the scene.

The State cites *People v. Valen* (1989), 183 Ill. App. 3d 571, 577, 539 N.E.2d 261, in which the court held that the relevant inquiry is whether the evidence, viewed in the light most favorable to the State, would support a finding by any rational trier of fact that the essential elements of the crime have been proven beyond a reasonable doubt. (*Valen,* 183 Ill. App. 3d at 577.) "Proof beyond a reasonable doubt does not require the exclusion of every possible doubt, and a conviction may be sustained upon wholly circumstantial evidence, so long as the entire chain of circumstances leads to a reasonable and moral certainty that the accused committed the crime." *People v. Cruz* (1984), 129 Ill. App. 3d 278, 286, 472 N.E.2d 175, 180; *People v. Williams* (1977), 66 Ill. 2d 478, 484, 363 N.E.2d 801.

In *Valen,* the court upheld defendant's conviction finding that her telephone conversations with an undercover officer prior to the transaction and her presence at the time of the drug sales supported the State's conclusion that she played an active role and shared in the common illegal purpose of selling drugs. (*Valen,* 183 Ill. App. 3d at 577.) In *Tinoco,* the defendant was present during three drug purchases, spoke to the undercover officer about future drug sales and

put $2,400 in his pocket from one of the sales and $4,800 from another. *Tinoco*, 185 Ill. App. 3d at 824.

Here, while defendant was not present at Ahern's car when Victor delivered the drugs, nor was he seen holding drugs or money, the State argues that Officer Taveggia saw Victor "receive cocaine from the defendant." He observed defendant and Victor from a distance of approximately 150 feet during daylight hours. Victor took the record album from defendant's car, and when the drugs were delivered to Ahern, they were inside the album cover.

While Victor was momentarily out of Ahern's sight on one side of the viaduct and out of Taveggia's sight on the other side, the evidence established that he entered the viaduct with the record album and immediately exited with the record album in which he then delivered the drugs to Ahern. It makes no sense to conclude that in spite of Victor's earlier statements that his "connect" was on the way with the drugs, and in spite of the fact that after Victor took the record album from defendant's car he delivered the drugs to the officer, during the brief time he was out of sight and in the viaduct he had produced the cocaine from some source other than defendant's car. Had Victor been able to produce the drugs without his contact with defendant, certainly he would have concluded the sale alone. There can be no other reason for the activity of going back and forth through the viaduct or for prolonging the completion of the sale than defendant's active participation in the delivery of the cocaine.

We therefore affirm his conviction for delivery of a controlled substance on the basis of accountability in violation of section 5—2 of the Illinois Criminal Code (Ill. Rev. Stat. 1987, ch. 38, par. 5—2).

INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant's final contention is that his convictions should be reversed because he was denied effective assistance of counsel. Defendant argues in support of this contention that his trial counsel allowed consolidation of two Class X felony offenses for bench trial, filed no pretrial motions and conducted a minimal cross-examination of the State's two witnesses which consisted of a "regurgitation" of their statements on direct examination. Defendant argues that his trial counsel failed to raise any of the arguments or issues raised on appeal and "did nothing to investigate necessary witnesses or pursue things of that nature."

Defendant contends that his attorney failed to raise certain defenses with regard to the possession with intent to deliver charge. Specifically, defendant contends his counsel should have filed a motion

to suppress evidence of the search that revealed cocaine in his car and should have filed motions to produce or call Victor as a witness so he could investigate a possible entrapment defense.

Defendant cites *People v. Howard* (1979), 74 Ill. App. 3d 138, 141, 392 N.E.2d 775, where the court found defendant received ineffective assistance of counsel after trial counsel failed to discover defendant's psychiatric records, which could have been used at his competency hearing before his aggravated battery trial. Defendant cites *People v. Corder* (1982), 103 Ill. App. 3d 434, 438, 431 N.E.2d 701, where the court found ineffective assistance of counsel when trial counsel failed to interview potential witnesses, subpoena witnesses and relevant evidence and failed to introduce evidence favorable to his client.

Defendant cites *People v. Krankel* (1983), 113 Ill. App. 3d 992, 996, 447 N.E.2d 1379, where the court found ineffective assistance of counsel when trial counsel failed to interview an alibi witness named by defendant several months prior to his burglary trial. We note that the *Krankel* ruling was vacated by the supreme court in *People v. Krankel* (1984), 102 Ill. 2d 181, 464 N.E.2d 1045, and on remand the appellate court found defendant was not denied effective assistance of counsel by his trial counsel's failure to interview alibi witnesses because the evidence indicated that the decision was part of his trial strategy. *People v. Krankel* (1985), 131 Ill. App. 3d 887, 476 N.E.2d 777.

The State responds that defendant has failed to sustain his burden of proof on appeal requiring him to show that the outcome of the trial would have been different had counsel pursued any of the strategies suggested. Unlike *Krankel*, defendant failed to name witnesses that his attorney could or should have interviewed. Defendant failed to put forth any evidence that an entrapment defense was possible.

As to the specific charge of possession with intent to deliver, the State contends that police officers were permitted to search defendant's vehicle as a search incident to a valid arrest. Defendant does not allege that police had no probable cause to arrest him and therefore a search incident to a valid arrest is permissible. (*People v. Tisler* (1984), 103 Ill. 2d 226, 234, 469 N.E.2d 147.) The State argues that in light of Victor's statements to Officer Ahern it was no doubt a trial tactic not to call Victor and compel him to testify.

The State argues that defendant has presented no additional or independent evidence that would lead this court to believe trial counsel's moves were anything more than trial strategy. Defendant has not provided this court with affidavits from witnesses who were available for trial but were not called. Defendant has not provided this

court with information that would indicate that testimony from Victor might have exculpated defendant.

To establish ineffective assistance of counsel a defendant must prove: (1) that his counsel's performance fell well below the objective standard of reasonableness and (2) that, but for his counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.

A strong presumption exists that counsel has performed effectively. Any claim of incompetency arising from a matter of trial strategy will generally not support a claim of ineffective representation. (*People v. Whittaker* (1990), 199 Ill. App. 3d 621, 628, 557 N.E.2d 468.) Counsel's performance cannot be evaluated in hindsight but instead must be viewed in light of his total performance. *Whittaker*, 199 Ill. App. 3d at 627.

First we consider defendant's contention that his trial counsel should have moved to suppress evidence recovered as the result of the search of his car, though we note for the record that defendant has not challenged, either at trial or on appeal, the officer's probable cause determination that led to defendant's arrest.

To determine whether a warrantless arrest meets the reasonable grounds/probable cause requirement, the trial court must decide whether a reasonable and prudent man, having the knowledge possessed by the officer at the time of the arrest, would believe that defendant committed an offense. (*Tisler*, 103 Ill. 2d at 237.) If the trial court finds that a warrantless arrest was based on probable cause, the arrest is deemed lawful and evidence obtained during a warrantless search incident to that arrest is admissible to prove defendant's guilt. *Tisler*, 103 Ill. 2d at 237.

We find the police officers had probable cause to arrest defendant on May 25, 1988. Drug purchase negotiations were in progress between Ahern and Victor. Victor had told Ahern that the drugs were under the hood of "his guy's" car. When defendant and Victor began to drive away, the car was curbed and defendant was arrested. Since the officers had this knowledge and therefore probable cause to stop the defendant, defendant's counsel would have been unsuccessful on a motion to suppress evidence of the search.

Next, defendant alleges his trial counsel failed to challenge errors in the identity of the actors named in the indictment charging simple conspiracy on May 18. The indictment charged that defendant negotiated the transaction and that Victor brought the cocaine to the site, whereas the proof at trial established that it was Victor who negotiated with Ahern and defendant who brought the cocaine to the

site. Defendant contends his trial counsel failed to raise this discrepancy between the charges in the indictment and the proofs produced by the State and concludes that the logical inference is that defense counsel failed to read the indictment. He argues that this "gross" error is clearly an example of his inadequate representation of the defendant. Defendant cites no case authority in support of his argument. Because such defects in the indictment may be amended and are not grounds for dismissal of the charge by statutory provision (Ill. Rev. Stat. 1987, ch. 38, par. 111—5), we conclude that defense counsel's failure to raise an objection on this basis did not compromise defendant's position. Had counsel objected, the trial judge would have ordered the indictment amended and the crime charged would not have been dismissed.

■■ Defendant argues that his counsel was ineffective because he failed to object to consolidation of the two felony indictments into one trial. The cases were not consolidated, however, but were tried together. The decision to permit joinder is a matter left to the sound discretion of the trial court. (*People v. Olson* (1978), 59 Ill. App. 3d 643, 649, 375 N.E.2d 533.) Joinder of criminal offenses is not permitted where the charges are not based upon the same act or are not based upon two or more acts which are part of the same transaction. *People v. Benka* (1983), 117 Ill. App. 3d 221, 223, 453 N.E.2d 71.

We find no abuse of discretion in consolidating the two indictments into one trial, especially in light of the fact that each trial would have involved the same witnesses and defendants. Jiminez was the only additional party involved when the court consolidated the actions and he made no objection to the consolidation. The State presented only two witnesses, and their testimony clearly delineated which events occurred on May 18 and which occurred May 25. The trial judge was not confused by the testimony. This was a bench trial before an experienced judge. The evidence of the transaction of May 18 was admissible against the defendant in the trial covering the transaction on May 25 and evidence of the transaction on May 25 was admissible against the defendant in the trial covering the transaction on May 18. In addition, there is a presumption that a trial court relied on only proper evidence in reaching its conclusion. (*People v. Brock* (1989), 184 Ill. App. 3d 595, 599, 540 N.E.2d 554.) Defendant has not shown how he was prejudiced by the consolidation or how the results of the trial would have been different.

■■ Defendant has argued that his trial counsel failed to file a motion to produce or call Victor as a witness and failed to conduct an aggressive cross-examination of the State's witnesses. Defendant has

not shown that Victor's testimony would have been favorable to his defense nor has he shown how the results would have been different if his counsel had pursued a more aggressive cross-examination of the State's witnesses or even if Victor had been compelled to testify.

■■■ Finally, our review of the record indicates that in defense counsel's closing argument, counsel argued that the possession with intent to deliver charge should fall because defendant was arrested while leaving the scene with the cocaine, thereby negating his possibility of delivering the drugs. Possession with intent to deliver may be inferred when the amount of cocaine defendant possessed, such as the kilogram here, could not be viewed as intended for personal use. (*Chrisos*, 151 Ill. App. 3d at 147.) Possibility of delivering the drugs is not a consideration which compels reversal. Defense counsel raised the failure to complete the delivery of the drugs at trial and therefore defendant's contention that his counsel failed to defend him on that charge is unfounded.

■■■ On appeal defendant contends the trial court erred when it "entered judgments and sentences on lesser included offenses." But defendant neither explains nor expands on the allegation and therefore we consider the issue waived on appeal.

We therefore conclude that defendant has not met the burden of proving that his counsel's conduct fell below the standards required for effective assistance, nor has he proven that without his counsel's error, the results of his trial would have been different.

For all the foregoing reasons, we affirm defendant's conviction for calculated criminal drug conspiracy and for possession with intent to deliver a controlled substance on May 25, but we reverse defendant's conviction and sentence for armed violence on May 25. We affirm defendant's conviction for delivery of a controlled substance and conspiracy on May 18.

Judgment affirmed in part and reversed in part.

EGAN, P.J., and McNAMARA, J., concur.